CALVIN G. COLLINS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed January 10, 1925.

Petition for Rehearing Denied February 14, 1925.

1. In a trial for murder the defense of self defense is not supported by evidence that the deceased "reached his hand back."

2. In order to acquit a defendant charged with unlawful homicide on the ground of insanity he must have been insane at the time the unlawful act was committed. The question whether the accused had a sufficient degree of reason to know that he was doing an act that was wrong is one for the jury.

3. Anger is a motive which sometimes impels one to murder another and because it is overwhelming in its force and sweeps prudence aside it is none the less a motive and is in no degree an excuse that will relieve the affected one from responsibility for criminal homicide and such state cannot be said to be that of an insane person.

4. Legal provocation sufficient to reduce an unlawful homicide from murder to manslaughter may exist when a man's passions are aroused upon taking his wife in adultery but in

such case the slayer cannot take time and deliberàte upon the wrong and then act upon an impulse to avenge the insult by taking the life of the wrongdoer.

5. The irresistible impulse or moral insanity doctrine is not recognized in this State as an excuse for an unlawful act.

6. The admission of evidence offered by the State to disprove the story of a wife who told her husband about improper proposals to her and criminal assaults upon her by another is harmless error, if error at all, in a case where the husband, taking time to consider the story and verify it in part, acts upon an impulse to avenge the insult, or from the emotion of anger takes the life of the wrongdoer.

7. Evidence examined and found sufficient to sustain a verdict of manslaughter.

A Writ of Error to the Circuit Court for Hillsborough County, L. L. Parks, Judge.

Judgment affirmed.

*Macfarlane & Pettingill*, for Plaintif in Error.

*Rivers Buford*, Attorney General and *Marvin C. McIntosh*, Assistant Attorney General, for the State.

ELLIS, J.—The plaintiff in error, to whom reference will be made hereinafter as the defendant, killed Clarence Weeks by shooting him with a pistol on May 10th, 1923.

The defendant was indicted for murder, pleaded not guilty, and was convicted of manslaughter. The defense was self-defense and insanity.

The killing occurred in the following manner: Clarence Weeks came out of a house on Zack street in Tampa where he lived, and entered an automobile on invitation of Mrs. Reed, and in which she was sitting. Mrs. Reed also had a

room in the house. The defendant was standing in the door of a drug store which is located on the first floor of the building, the upper floor of which contained rooms which were let to persons desiring rooms for living quarters. Weeks had undertaken to give Mrs. Reed some instructions in the matter of operating her automobile, which was a new one, and with which she was having some trouble in the matter of starting it.

The defendant crossed the sidewalk, approached the Reed car, which was of the closed type or style, opened the door which was nearest the sidewalk and upon the side of the car on which Weeks was sitting, drew a revolver and fired at Weeks twice, one bullet entered the neck and produced death.

The defendant testified that as he approached the automobile in which Weeks was sitting, the door of the machine was open, and Weeks "reached his hand back for his pocket," and the defendant pulled his "gun" and shot.

These facts are exhumed from a mass of unnecessary and confusing detail.

The theory of self-defense was supported by the evidence of the defendant only, who said that as he was about to speak to Weeks the latter "reached his hand back" and thereupon defendant drew his pistol and fired. That interpretation of the law of self-defense which justifies a person armed with a deadly weapon, in taking the life of another because that other "reached his hand back for his pistol," or "made as if to draw a pistol," or "put his hand on his hip pocket," has never been approved by any decision of this court nor seemingly approved by any language used by it. Upon the contrary, language has been used by this court in disparagement of any theory of self-defense which tends to hold the life of a human being at the mercy or the cowardice or capricious impulse of one

whose easily awakened fear prompts him who is armed
with a deadly weapon, to strike and upon what at best may
be called a hostile demonstration on his victim's part.

The defense of insanity rested upon a story of base vul-
garity and degrading licentiousness on the part of Weeks
in his conduct towards the wife of the defendant.  The
substance of the story was that Weeks had been a suitor
for the hand of the young woman who became the wife of
the defendant.  After their marriage Weeks pursued her
with the intention of subjecting her body to his lecherous
desires, either by obtaining her consent to the illicit inter-
course, or through force to compel her to submit.  Weeks'
advances were sometimes made in the presence of the hus-
band who, either through fear of Weeks because of his
superior size and brutal aggressiveness, or because he re-
garded such conduct in a different light, offered no resent-
ment other than to request Weeks to keep away from de-
fendant's home and cease attentions to his wife.  Later,
in order to avoid Weeks, the defendant and his wife moved
to a place about eighteen miles away.  Weeks pursued
them even there, and made indecent proposals to the woman
which were rejected.  On one occasion he assaulted the
woman and was prevented from accomplishing his pur-
pose by the timely appearance of defendant's mother, to
whom Weeks addressed insulting remarks and threatened
to kill her son.  This disgraceful conduct of the lecherous
man Weeks, so the testimony tends to show, culminated on
Sunday, May 6th, when Weeks in an intoxicated condition
went to the home of the woman's mother, to which place
the defendant's wife had gone after a separation because
of a quarrel between her and her husband the day before,
and forcefully putting her into an automobile in which
he had arrived on the scene with another person, proceeded
to drive around the town and into the country.  During

the afternoon while this ride was in progress, one of the occupants of the car suggested that they obtain some whiskey. Money was given to the woman with which to purchase it. She seemed to know where to obtain it. Securing the whiskey or ''Shine,'' she returned with it to the automobile and the party proceeded with the ride. She was prevailed upon to take a drink, into which Weeks placed two white tablets. Thereupon the woman became stupid. She became so slow of apprehension that when the man Weeks told her he was going to take her to a hotel and that she need not fear her husband because Weeks had a pistol, or words to that effect, she could offer but a feeble protest. Weeks taking her into a house, secured a room, and entering it with her, told her to disrobe. She heard but did not comprehend. He disrobed her and the next thing she knew was next morning when she awakened she was nude and lying beside Weeks in the bed, who was also nude. He thereupon told her with an oath that he ''told'' her he ''would get her.'' She was then taken home, and Thursday told her husband of this experience.

The defendant was greatly agitated, appeared to be nervous and excited. Hurriedly sought two of the occupants of the car, one of whom he found at the hospital, questioned them, secured a pistol and sought out Weeks, whom he found at the house on Zack street. The defendant went upstairs, found Weeks in the hall, asked him where the wife was, charged him with taking her out and debauching her the Sunday before. Weeks denied any knowledge of the whereabouts of the woman, and denied that he had been with her the Sunday before. The defendant said in his testimony that he had seen them together in a car on that day. At this point in the conversation they were interrupted by Mrs. Reed, who coming out of her room announced to Weeks that she was ''ready.'' Weeks went

for his coat and hat. Mrs. Reed went down to the street and to her car and got in it. The defendant followed her downstairs, went into a drug store, went to the toilet, came out, waited for Weeks, and when the latter entered the car by the side of Mrs. Reed the defendant approached the car and fired upon Weeks. When the defendant was arrested, which was immediately afterwards, he appeared to be a little nervous or agitated, but told the policeman calmly that he shot Weeks and no word had passed between them while Weeks was in the car.

Considering all this evidence, the jury returned a verdict of manslaughter. They concluded that the homicide was unlawful, but that it was not murder in any degree.

The defendant's mind may have been inflamed with resentment against the deceased to which his temporary estrangement from his wife may have added intensity, but that he was bereft of reason to the point that he could not appreciate the wrongful character of his act, was not made to appear to the jury with sufficient clearness to create a reasonable doubt as to his responsibility. We find nothing in the evidence to require any interference with that conclusion. The "irresistible impulse" or "moral insanity" doctrine is not recognized in this State as an excuse for an unlawful act. See Hall v. State, 78 Fla. 420, 83 South. Rep. 513; Cochran v. State, 65 Fla. 91, 61 South. Rep. 187; Davis v. State, 44 Fla. 32, 32 South. Rep. 822.

In order to acquit a defendant, charged with homicide, on the ground of insanity, he must have been insane at the time the unlawful act was committed, at the particular moment of the homicide. Cochran v. State, *supra.* The question whether the accused had a sufficient degree of reason to know that he was doing an act that was wrong, is one for the jury.

No question exists in this case as to the defendant's

mental soundness. There is no suggestion that due to mental disease, which had progressed to the point of irresponsibility at the time of the homicide, the defendant was incapable of understanding the nature and character of his act. Nor of intermittent insanity recurring through many years between lucid intervals, and that the act was committed while under the influence of an attack of mental disorder, but that driven by contemplation of the wrongful conduct of Weeks into a state of anger equivalent to mental frenzy, he killed Weeks in a moment of uncontrollable impulse, or that contemplation of his wrongs produced in the defendant's mind a condition of mental irresponsibility equivalent to temporary insanity.

But anger is a motive which sometimes impels one to murder another, and because it is overwhelming in its force and sweeps prudence and consideration aside, it is none the less a motive, and is in no degree an excuse that will relieve the affected one from responsibility for criminal homicide, and such state cannot be said to be that of an insane person. See Plake vs. State, 121 Ind. 433, 23 N. E. Rep. 273, 16 Am. St. Rep. 408.

In the State of Indiana where the doctrine of "irresistible impulse" as an excuse for the commission of crime, seems to obtain, it is qualified by the conditions that, if the will is simply overborne by ungoverned passion there may be criminal responsibility.

There is no statutory ground of provocation or adequate cause which is applicable to the facts in this case. Therefore the common law obtains and prescribes the rule by which human conduct in such matters is controlled. The law reduces the killing of a person in the heat of passion from murder to manslaughter out of a recognition of the frailty of human nature, of the temporary suspension or overthrow of the reason or judgment of the defendant by

the sudden access of passion and because in such case there is an absence of malice. Such killing is not supposed to proceed from a bad or corrupt heart, but rather from the infirmity of passion to which even good men are subject. Passion is the state of mind when it is powerfully acted on and influenced by something external to itself. It is either of the emotions of the mind known as anger, rage, sudden resentment or terror. But for passion to constitute a mitigation of the crime from murder to manslaughter, it must arise from legal provocation. See 1 Michie on Homicide, §38.

The act of the seducer or adulterer has always been treated as a general provocation. Sexual intercourse with a female relative of another is calculated to arouse ungovernable passion, especially in the case of a wife. See McNeill v. State, 102 Ala. 121, 15 South. Rep. 352; State v. Yanz, 74 Conn. 177, 50 Atl. Rep. 37, 54 L. R. A. 780; Rowland v. State, 83 Miss. 483, 35 South. Rep. 826; State v. John, 30 N. C. (8 Ired. Law) 330; State v. Young, 52 Ore. 227, 96 Pac. Rep. 1067. But in such case the slayer can not take time and deliberate upon the wrong and act upon an impulse to avenge the insult by taking the life of the wrongdoer. If reasonable time has elapsed for the passions to cool, or if after merely learning of the outrage against his marital rights the wronged individual immediately takes vengeance on the other by pursuing and killing him, the offense is murder, not manslaughter. See 13 R. C. L. 795 and cases cited above; Jackson v. State, 91 Ga. 271, 18 S. E. Rep. 298; Rogers v. State, 128 Ga. 67, 57 S. E. Rep. 227; State v. Herrell, 97 Mo. 105, 10 S. W. Rep. 387; State v. Samuel, 48 N. C. (3 Jones' Law) 74.

In the case at bar the defendant knew a long while before the 10th of May, many weeks before in fact, that Weeks was pursuing the defendant's wife for illicit pur-

poses. He had been subjected to insults and indignities on her account by the deceased. The defendant's mother had told him of an outrageous assault made by Weeks upon defendant's wife. The defendant and his wife had moved many miles away to escape the offensive attentions of Weeks to the woman. He followed them to their new residence. Then defendant and his wife moved back to Tampa. Weeks continued his pursuit of the woman. Then followed a quarrel between the defendant and his wife, and a separation, temporary perhaps, but a separation. The day following the quarrel defendant saw Weeks and the woman in an automobile. A few days afterwards she told him of her experience with Weeks at the hotel. Defendant left her presence greatly agitated, sought confirmation of the story from the two other men reported to have been in the car, procured a pistol, sought the deceased at his boarding house, charged him with taking the woman out in an automobile the Sunday before. The deceased denied it. Defendant went out of the building, waited for Weeks to come down, and when he entered the automobile with Mrs. Reed, crossed the sidewalk and shot the deceased. The defendant said that his purpose in approaching the deceased the second time was merely to have further conversation with him in explanation of his alleged conduct. The defendant told the officers who arrested him that no word was spoken. That he shot Weeks when the latter reached back to his pocket.

In such case, whether the story of the defendant's wife was true or not, was mimaterial. If it was true and the defendant implicitly believed it, that circumstance would not have reduced the crime from murder to manslaughter. Nor would the defendant's overwhelming emotion of anger, if indeed he was under such emotion, have moderated the crime to manslaughter. Nor would he have been excused

under the theory that his anger, his righteous indignation, his frenzy having taken control of his volition his will was overcome and he was irresistibly impelled to kill, unless it could have been shown that due to a mental disease or weakness from which he suffered, his mind gave way before the anger aroused by the wrongs committed by Weeks. Nothing of that kind, however, appears in the evidence. There was not sufficient evidence to overcome the presumption of normality of mind.

In this view of the case the admission of evidence on the part of the State tending to contradict the story of defendant's wife as to her experience of the Sunday previous was harmless error, if error at all.

There is no doctrine announced in the case of Whidden v. State, 64 Fla. 165, 59 South. Rep. 561, nor in Childers v. State, 74 Fla. 288, 77 South. Rep. 99, cited by the learned counsel for the defendant, in conflict with the doctrine announced above. In the latter case the State proved the wife's communication to her husband as to her illicit relations with the deceased over the defendant's objection, and the court speaking through Mr. Justice TAYLOR held the evidence to be admissible to show motive for the murder. Childers was convicted of murder in the first degree.

In the Whidden case the accused was convicted of murder in the first degree, the court speaking through Mr. Chief Justice WHITFIELD, announced the doctrine that communications of the wife to the husband relating to a criminal assault by the deceased upon the wife, were admissible upon the theory that a sudden transport of passion caused by such a communication to the defendant by his wife was proper to be considered by the jury in considering whether the element of premeditation was absent from the defendant's mind when he killed the deceased and

that it might be sufficient to reduce the homicide below murder in the first degree.

There was no error in allowing non-expert witnesses in rebuttal to testify as to the defendant's appearance and manner after the shooting of Weeks as indicating that the defendant was mentally normal, nor expressing their opinion as to his normality. In view of the verdict of the jury the defendant received all the benefit that could legally be received from the theory that his reason was irresistibly overcome by his passion aroused by his wife's communication to him and that the impulse to slay Weeks on account of it was stronger than his will.

The doctrine for which the defendant contends in this case does not exist in this State. That doctrine, if it obtains in any jurisdiction, is that a man is excused from criminal responsibility, if when his wife informs him that another man has had illicit intercourse with her, or criminally assaulted and carnally knew her, he seeks out the wrongdoer and kills him, because his passion was so greatly aroused that he was momentarily insane when he killed the wrongdoer. Private revenge is not justified nor excused upon such theory in this State, under the law as it exists.

We have examined other errors assigned, and in view of the evidence and Chapter 6223, Laws of 1911, Section 2812, Revised General Statutes of Florida, and an examination of the entire case, we think the judgment should be affirmed. It is so ordered.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.