**WILLIAM ARES FEBRE v. THE STATE OF FLORIDA**

30 So. (2nd) 367                                    January Term, 1947
May 6, 1947                                     Special Division A

*Edwin R. Dickenson* and *Julian Diaz,* for appellant.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

CHILLINGWORTH, Associate Justice:

The defendant was convicted of murder in the first degree, with recommendation to mercy.

The story is old. The details are different. About midnight one Saturday, the defendant returned to the home in which he and his wife had lived together until a month before. He knocked on the door. A man's voice answered. "Who is there?" The defendant, using his own key to enter the front door, walked into the living room. As he did so his wife, scantily clad, appeared in a doorway, just a few feet away, and to his immediate right, which doorway separated the living room from the bedroom they formerly used. A man,

entirely nude except for his socks, came through the doorway. He was shot by the defendant. A struggle ensued. This man received several larcerations and wounds on the head, resulting in a skull fracture, which produced death. When the police entered the room, a few minutes later, having been called in response to a 'phone call from one who happened to be passing by in the street, the deceased lay upon the floor.

The defendant and his wife had been married for about a year and a half. They had separated about a month before the killing. He had filed a suit for divorce, on which a decree pro confesso had been entered and concerning which the testimony had apparently been taken, but no decree had been entered by the court. The defendant, though going with another girl at the time, had been endeavoring to effect a reconciliation with his wife. The defendant knew the deceased, but had only met him on one previous occasion. The defendant had his wife out to dinner two days before the killing, in an effort to effect a reconciliation. The wife, who testified for the State, explained the presence of the deceased by saying that the two of them had been out during the evening, but the deceased had become ill, as a result of which he was unclothed and in her bedroom awaiting an alcohol rub. The evidence further indicates that in the six-room house there was only one light, if there was any light at all, and this light was in the kitchen, two rooms away. She testified that she and the deceased had been in the bedroom some ten minutes, but the alcohol rub had not commenced. The evidence fails to indicate that any alcohol was found on the premises with which she could have rubbed the deceased, had she endeavored to carry out her expressed intention. She said she and the deceased had been sweethearts for about three weeks, but she "did not have nothing to do with that with Johnnie," the deceased.

Several errors are assigned. The two which we deem proper to discuss being, first, as to a refusal of the court to give certain charges requested by the defendant and, secondly, that the evidence did not show the existence of a premeditated design to effect death.

In connection with the first alleged error, the record shows

that the defendant did request a number of charges, which were denied. At the conclusion of the testimony and before counsel argued the cause to the jury, the following appears in the record:

"Whereupon, the proposed instructions to the Jury were submitted to counsel for both sides; and no exceptions were taken or recorded."

While no exception as such is required when an objection is made to the giving or failure to give an instruction, F.S.A. 918.10 (5), the defendant, is nevertheless bound by F.S.A. 918.10 (4), which is as follows:

"No party may assign as error or grounds of appeal, the giving or the failure to give an instruction, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

The record fails to show that the defendant made any objection to the trial court to the giving or the failure to give any instruction. It is now too late in an appeal for him to assign as error, or as grounds of appeal, the giving or the failure to give an instruction to the jury.

The defendant further contends that the evidence fails to disclose a premeditated design to effect the death of the person killed and that the evidence, at most, indicates that there was sufficient legal provocation to reduce an unlawful homicide from murder to manslaughter. The defendant also urges self-defense, but the evidence utterly fails to establish any sufficient basis for such a defense.

The State asserts that the defendant had a premeditated design to effect death, because the defendant knew of the kind of a car that the deceased had, and saw or should have seen, a car of this kind parked in front of the home before entering it. The wife testified in response to a question propounded on direct examination: "Do you know whether or not Willie Febre knew the kind of Car Johnnie had?" And she replied. "He did know." The record is silent as to the basis for this expression of opinion concerning the knowledge of the defendant. However, if it may be inferred that the

defendant knew, or did have reason to know, that the deceased was in the house when he saw the car, certainly there is nothing to indicate the defendant had any reason to believe that, at the very moment the deceased was in the bedroom, only about fifty feet away, unclothed and about to receive an alcohol rub at the hands of his wife. It does not appear that the defendant knew of any improper relationship between the deceased and the wife of the defendant, until the defendant opened the door, and saw this nude man. In Collins v. State, 88 Fla. 578, 102 So. 880, under a set of circumstances fairly similar to those forming the basis of this prosecution, the defendant was convicted of manslaughter. In affirming the judgment, the court, speaking through Mr. Justice ELLIS, said:

"There is no statutory ground of provocation or adequate cause which is applicable to the facts in this case. Therefore the common law obtains and prescribes the rule by which human conduct in such matters is controlled. The law reduces the killing of a person in the heat of passion from murder to manslaughter out of a recognition of the frailty of human nature, of the temporary suspension or overthrow of the reason or judgment of the defendant by the sudden access of passion and because in such case there is an absence of malice. Such killing is not supposed to proceed from a bad or corrupt heart, but rather from the infirmity of passion to which even good men are subject. Passion is the state of mind when it is powerfully acted on and influenced by something external to itself. It is one of the emotions of the mind known as anger, rage, sudden resentment, or terror. But for passion to constitute a mitigation of the crime from murder to manslaughter, it must arise from legal provocation. See 1 Michie on Homicide, Sec. 38.

"The act of the seducer or adulterer has always been treated as a general provocation. Sexual intercourse with a female relative of another is calculated to arouse ungovernable passion, especially in the case of a wife."

In this case, defendant did not testify that he killed the deceased in the heat of passion, or that he did not know what he was doing, or that he was so moved by any emotion

that he killed the deceased. But his actions speak louder than any testimony he might have given. From the record it appears that those in the house at the time of the killing were of such a temperament and disposition that they reacted to human impulses much more readily, than they could have expressed themselves in any words at the trial. Phillips v. State, 88 Fla. 117, 101 So. 204.

The defendant certainly was no model husband. No doubt he had mistreated and abused his wife, though he denied it and though he was still trying to effect a reconciliation. He had been twice before convicted of crime. His excuse for carrying a pistol, while plausible, was wholly uncorroborated. He had perjured himself in the divorce suit. But he was human and had "the frailty of human nature," Collins v. State, supra, when he saw his wife and this nude man, emerging from the bedroom that he and she formerly occupied. We conclude that the killing was committed in sudden heat of passion, aroused by adequate provocation. 40 C. J. S. 907, 46-a F.S.A., 782.03.

The evidence establishes guilt of the defendant on a charge of manslaughter, but not murder in the first degree. F.S.A. 920.06; Douglas v. State, 152 Fla. 63, 10 So. (2) 731; Pearce v. State, 154 Fla. 656, 18 So. (2) 754.

Therefore, the judgment is modified, with directions to adjudge the defendant guilty of manslaughter, and sentence him as may be appropriate.

It is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.