152 So.2d 793 (1963)
John D. HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
No. 2926.
District Court of Appeal of Florida. Second District.
January 18, 1963.
Rehearing Denied February 13, 1963.
*794 Mark R. Hawes of Earle & Hawes, St. Petersburg, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee; Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
KANNER, Acting Chief Judge.
Under two counts of an information, defendant was charged with (1) manslaughter in the culpably negligent operation of an automobile and (2) manslaughter while intoxicated. The jury found him guilty under the culpable negligence charge but acquitted him as to the second count; and he was sentenced to be imprisoned and committed to the custody of the Department of Corrections for a period of from six months to twenty years. Appeal from the judgment of conviction was filed, based upon three points.
Asserted by defendant under his first appeal point is error by the trial judge through his failure to have given an instruction to the jury defining excusable homicide or murder as prescribed by section 782.03, Florida Statutes, F.S.A. The provision contended as applicable reads:
"Homicide is excusable when committed by accident and misfortune * * * in doing any other lawful act by lawful means with usual ordinary caution and without any unlawful intent * * *."
Generally, when a party wishes to avail himself of a charge on a particular point omitted by the trial court, he should prepare and request such instruction; otherwise he will not be permitted to assign its omission as error. See Miller v. State, 1918, 76 Fla. 518, 80 So. 314; 32 Fla.Jur., section 142, pages 388-389; section 918.10(3), Florida Statutes, F.S.A. Moreover, section 918.10(4), Florida Statutes, F.S.A., provides that in a criminal case, no party may assign as error or grounds of appeal the giving or the failure to give an instruction unless he objects before the jury has retired to consider its verdict. In this regard, one is required to state distinctly the matter to which he objects, as well as the grounds of his objection. Febre v. State, 1947, 158 Fla. 853, 30 So.2d 367; Forceier v. State, Fla.App. 1961, 133 So.2d 336, 337. Nor can objections as to instructions be raised for the first time by embodying them in motion for new trial. Simmons v. State, 1942, 151 Fla. 778, 10 So.2d 436.
The trial court, in instructing the jury as to manslaughter by culpable negligence, said:
"I read you Florida Statute 782.07 defining manslaughter: `The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this chapter, shall be deemed manslaughter, and shall be punished by imprisonment in the state prison not exceeding twenty years, or imprisonment in the county jail not exceeding one year, or by fine not exceeding five thousand dollars.'"
Additionally, the judge went on to define culpable negligence. Defendant takes no exception as to the correctness of definition of culpable negligence as given.
*795 It may be here interjected that defendant made requests for some thirteen instructions, objecting to failure of the court to have given three of them, then stating, "Those are my objections." Later, upon recall of the jury by the court for the giving of an additional instruction, the following colloquy transpired:
"MR. HAWES: I take it, Your Honor, that the State has no objection to the Court's charge; is that correct?
"MR. VEGA: That is right.
"MR. HAWES: I have stated all of mine, Your Honor."
Again, however, defendant had interposed no objection concerning failure of the court to have given the subject instruction. For the first time, on the motion for new trial and then before this court, failure to define excusable homicide is raised as having constituted fundamental error. It is true that, with respect to jury instructions, an error of the trial court may be reviewed on appeal if the error is so fundamental as to warrant such action or when the appellate court in its judgment deems the interests of justice to so require, even though no objection was interposed. See Forceier v. State, supra.
Defendant urges that the evidence adduced at the trial places him within the ambit of the statutory definition of excusable homicide as quoted above and requires the giving of the subject instruction. In the main, the evidence advanced by him sets out essentially that something went wrong with his power steering at the time of the accident involved, that his right front tire went flat before he hit the bridge where the charged homicide occurred, that prior to the striking of decedent with his vehicle defendant was traveling most of the time about 50 to 55 miles per hour, that decedent and other men on the bridge wore dark clothing, that during part of the time defendant was on the bridge he was dodging one of the men who stood upon it, that he saw no one else, and that he did not feel any effects of alcohol which he had previously consumed.
Our study of the record reveals that these assertions are refuted. We do not find that a defect of the power steering was established; the testimony relating to defendant's flat tire theory and to his account of the speed at which he was traveling is at odds with other evidence; the bridge upon which decedent, along with four other men, was standing was described as having been well-lighted; defendant by his own admission had consumed two Vodka Collins drinks from 8:00 to 9:30 p.m. just prior to the accident and one drink about mid-afternoon. Beyond this, there was testimony that State Road 29, the only artery of travel by land into the town of Everglades, was a road with which defendant was thoroughly familiar; that traveling on this road, he approached the 200 foot bridge spanning Barron River via a curve at a speed of between an estimated 80 to 90 miles per hour. The curve mentioned begins about two-tenths of a mile north of the bridge, with its sharpest part being immediately north of the bridge and with a reduce speed sign at the point where the curve begins, then a 40 mile per hour sign. Defendant, steering with one hand, left the road 49 feet from the bridge, struck a steel reinforced concrete post, bending it to a 45 degree angle, then struck the western portion of the bridge, tearing down 27 feet of reinforced hand railing. After that, he veered away slightly for another 85 feet and again hit the bridge, breaking down the remaining 111 feet of the western side of the railing. Defendant, in this entire process, applied no brakes and employed both hands in steering only after he had left the road and pulled his car back to regain it.
Upon the bridge there was a no fishing sign. As defendant's car reached it, there had been five vacationing fishermen preparing to fish. Three were struck by defendant's automobile with the result that the decedent here concerned and another man died; of the two who escaped being hit, one jumped into the river to avoid defendant's vehicle, while the other had previously walked off the bridge. This apparently *796 disposes of defendant's position to the effect that he was dodging a man; it does not appear that he did in fact dodge anyone, since decedent and his party were the only persons testified to as having been on the bridge at the time.
We cannot say that defendant, by the described conduct was proceeding in conformity to the statutory provision defining homicide as being excusable "* * * when committed by accident or misfortune * * in doing any other lawful act by lawful means, with usual ordinary caution, and without any unlawful intent * * *". Section 782.03, Florida Statutes, F.S.A. (Emphasis supplied.)
Thus, in view of the evidence, which, of itself, did not bespeak a basic necessity requiring that the court give an instruction defining excusable homicide, together with defendant's failure to have made a request or objection, we can find no reversible error as to this point.
Point two of defendant protests that the trial court permitted the jury, out of the presence of defendant, his counsel, and the court, to separate and to view the scene individually without admonishing the jury to the contrary, in violation of sections 918.05, 918.06, and 914.01(6), Florida Statutes, F.S.A.
State Road 29 leads from the Tamiami Trail to Everglades, the county seat of Collier County; and the bridge concerned, crossing Barron River on the outskirts of Everglades, is a connecting part of that road. It is the only road through which access by land to Everglades is afforded. Upon the second day of the three day trial, the following stipulation, proposed by defendant, was made a part of the record:
"MR. HAWES: If Your Honor please, the ordinary thing in most cases is, as you know, the jury does not have the opportunity of viewing the scene of locations such as this. I have discussed this with Mr. Vega, and we are both aware of the fact that it is impossible for the jury that is in the box to get to the Court House without coming down that road. They have necessarily seen it, and it might be proper for the record to show that the jury have traveled over this curve and have seen the scene itself. Is that agreeable to stipulate?
"MR. VEGA: Yes, we will be glad to stipulate."
It thus appears that what the jurors were required to do through necessity in order to go to and from the courthouse was the matter of traveling over State Road 29. This is the situation complained of, with no evidentiary circumstances indicated as to the conduct of the jurors with respect to their traveling to and from the courthouse. The stipulation speaks for itself. Additionally, certain testimony elicited on the first day of the trial brought out necessity for use of the road in question by persons going to and from Everglades. The defendant was cognizant of the essential condition of travel which the stipulation sets out, and the trial proceeded with no objection being voiced. McCollum v. State, Fla. 1954, 74 So.2d 74, 47 A.L.R.2d 1218, a capital case cited by defendant, is dissimilar factually. There appears to have been no error with respect to this contention of defendant.
By his point three, defendant disputes that the evidence was sufficient to sustain a charge of manslaughter by culpable negligence. In prosecution for manslaughter by culpable negligence in operating an automobile, the "culpable negligence" required to sustain such a charge "* * * must be of a `gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.'" See Hunt v. State, Fla. 1956, 87 So.2d 584. The *797 elements of culpable negligence have been defined within the meaning of the manslaughter statute as the omission by the one so charged to do something which a reasonable, prudent, and cautious man would do, or the doing of something which such a man would not do under the circumstances surrounding the particular case. Fort v. State, Fla. 1956, 91 So.2d 637.
Excessive speed alone is not necessarily culpable negligence sufficient to sustain a charge of manslaughter; but coupled with other circumstances attendant upon an accident, it could show such a reckless disregard for human life and safety of others as would be sufficient to sustain such a charge. Henderson v. State, Fla. 1956, 90 So.2d 447; Penton v. State, Fla.App. 1959, 114 So.2d 381. In the present case, there are other circumstances to be considered along with excessive speed. These include defendant's failure throughout to have applied his brakes; loss of control by defendant of his vehicle at the sharpest point of a curve immediately north of a bridge; the signs requiring diminution of speed from the point where the curve commences; defendant's familiarity with State Road 29; necessity for use of that road by all persons traveling by land to and from Everglades; the presence of the lights upon the bridge and its easy visibility; the fact that defendant, until his vehicle had left the road, was driving with only one hand. These factors or circumstances emerging through the evidence were in addition to that indicating excessive speed and that which showed physical destruction of portions of the bridge wrought along its length by the erratic course of defendant's vehicle.
We add that the jury, in reaching its verdict, had a right to consider, along with the other evidence, that defendant prior to the accident had partaken of alcoholic beverages, despite the fact that he was acquitted under count two charging manslaughter while intoxicated. It was proper to consider his consumption of intoxicating beverages as shedding light on his recklessness. See Hunt v. State, supra. By his own admission, defendant, although denying intoxication and although acquitted under that charge, had upon the afternoon in question consumed one drink and later, during the hour and a half preceding the accident, two Vodka Collins drinks. Accounts of others who testified varied as to the number of drinks consumed and the degree to which defendant was affected by them.
As to defendant's guilt under the culpable negligence charge, the jury must have believed the version offered by the state. We find no basis to upset the verdict of guilty returned, and the judgment of conviction is affirmed.
Affirmed.
ALLEN and SMITH, JJ., concur.