156 So.2d 186 (1963)
Richard Edwin NORMAN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 63-68, 63-69.
District Court of Appeal of Florida. Third District.
September 10, 1963.
Rehearing Denied October 1, 1963.
Max B. Kogen, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Leonard R. Mellon, Asst. Atty. Gen., for appellee.
Before BARKDULL, C.J., and TILLMAN PEARSON, and HENDRY, JJ.
PEARSON, TILLMAN, Judge.
The appellant was indicted for first degree murder in the death of his wife, Mary; and he was separately indicted for the same crime in the death of her paramour, Louis Malley. He plead "not guilty" and "not guilty for reason of insanity and/or temporary insanity" to each indictment. *187 Upon stipulation of counsel for the defense and counsel for the State, the cases were consolidated for trial. A notice of defense of insanity was filed pursuant to § 909.17, Fla. Stat., F.S.A.; and upon motion, the court appointed two experts to determine the mental condition of the defendant. The cause was tried before a jury which returned a verdict on each indictment of guilty of murder in the second degree. After motion for new trial and denial thereof, the court entered judgment of guilty of the crime of murder in the second degree in each case and sentenced the defendant on each conviction to confinement in the State Prison at hard labor for and during the term or period of his life. This appeal followed. We will discuss three of the points presented by the appellant. They are as follows:
I. The State failed to prove beyond a reasonable doubt the sanity of the appellant.
II. The evidence conclusively established that the defendant, if guilty, was guilty only of the crime of manslaughter.
III. The trial judge erred in denying the defendant's tender of testimony as to his character and reputation as to violence or non-violence.
The evidence before the jury viewed in the light most favorable to the appellant's contentions may be succinctly stated. The appellant had been married four times and was deeply attached to his last wife. Each of his three prior marital experiences had been colored by his alcoholism and had ended unhappily. During the last marriage he made a conscious effort to rectify past mistakes and build a new life. In furtherance of this aim, he submitted to an operation for sterilization because of his wife's insistence that she would have no more children. It might also be noted that having suffered from syphilis and chronic alcoholism, there existed the possibility of brain damage to defendant.
Norman became suspicious about the possible unfaithfulness of his wife and employed a detective agency to follow her. This agency reported that while under surveillance, she spent the afternoon with one of the appellant's close associates (decedent, Malley) in a motel room. The appellant instructed the agency to continue its surveillance and to inform him of any subsequent discovery of a similar situation so that he could confront the parties. The detective agency refused to continue the investigation on the same financial arrangement, and the appellant hired a new agency. During a subsequent afternoon, a detective employed by this agency discovered the wife and her paramour at a motel. The appellant left a business conference in which he was engaged, went to his safe, took a revolver therefrom, and proceeded to the motel.
At the motel the detective directed him to the wrong room. He kicked the door open and found the room empty. While the detective went to the motel office to secure additional information, the appellant discovered the correct room. He kicked the door open, discovering his wife putting her clothing on and Malley completely unclothed and in a condition which suggested prior sexual activity. The appellant killed them both, and after the shooting calmly surrendered himself to investigating officers and discussed the circumstances surrounding his act without visible agitation.
Appellant makes his chief thrust in this appeal upon the basis of "temporary insanity." He does not contend that there is evidence in the record of actual insanity prior to the killings, or subsequent thereto, but contends that the shock of the circumstances was such that he did not know right from wrong at the time of the act. This issue was squarely presented to the jury and the jury found against the appellant. Nevertheless, we must examine the record to determine whether there is sufficient evidence in the record to support the finding of the jury.
*188 It is the appellant's contention that he presented evidence which raised a reasonable doubt upon this issue, and therefore the burden shifted to the State to prove his sanity at the time of the killings. He further contends that the State failed to sustain this burden. The rule involved was applied in Farrell v. State, Fla. 1958, 101 So.2d 130, 133, where it was said: "All men are presumed sane * * *. But when there is testimony of insanity sufficient to present a reasonable doubt of sanity the presumption vanishes. The defendant is then entitled to an acquittal if the state does not overcome the reasonable doubt."
Three witnesses testified on the issue of sanity: (1) Dr. Michael M. Gilbert, a physician specializing in psychiatry and neurology who was employed by the appellant; (2) Dr. James A. Goodman, a physician specializing in psychiatry and neurology who was appointed by the court; and (3) Dr. Wilford Provo, a physician specializing in psychiatry, also appointed by the court.
The appellant places his greatest reliance on the testimony of Dr. Gilbert. The doctor testified as to the personal history and background as given to him by the appellant. The pertinent parts of this history have already been set forth. In addition, the doctor related a statement of the appellant that he had experienced frequent memory lapses, especially during periods of stress in World War II, and the further statement that it was appellant's purpose to hold Malley, the paramour, at gunpoint in the presence of the detective so that appellant could question the parties about the paternity of a child. Based upon this history and the further statement of appellant that when he saw Malley nude and Mary Norman lowering her dress, he saw a blinding flash, it was Dr. Gilbert's opinion that "When one adds all this up, it would be extremely surprising if a person of his personality makeup could possibly withstand this amount of stress without breaking down. In fact, I don't see how it's conceivable he could maintain the integrity of his ego in the face of this." Dr. Gilbert expressed his professional opinion that the appellant did not know the difference between right and wrong when the shots were fired.
The testimony of the two court appointed psychiatrists was offered by the State upon rebuttal. The appellant urges that the testimony of Dr. Goodman, when considered with that of Dr. Gilbert, was sufficient to raise a reasonable doubt as to the sanity of the appellant. The sum of Dr. Goodman's testimony was that the appellant was sane but in a "disassociated stage." The doctor defined "disassociated stage" as one in which "a certain part of the personality seems to take precedence over the normally conscious part of the personality."
The third psychiatrist, Dr. Provo, was unable to give an opinion as to whether the appellant was sane or insane at the time the shots were fired.
Even if this court were to determine that the testimony of the first two doctors was sufficient to raise a reasonable doubt as to the sanity of the appellant at the time of the shooting, it would not change the decision on this point because there was sufficient evidence in the record to establish sanity. All of the witnesses who were at the scene during the killing and immediately thereafter described appellant's reactions as those of an ordinary, well-oriented person. Such evidence may be considered by the jury upon its determination of the issue of sanity. Cf. Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L.R.A. 484. There can be no question but that the issue of sanity having been presented to the jury, their finding is supported by the evidence. See Crews v. State, 143 Fla. 263, 196 So. 590; Davis v. State, 44 Fla. 32, 32 So. 822.
Appellant by his second point urges that the evidence was such that it did not support the verdict of guilty of murder in the second degree and the court should have instructed the jury that the evidence *189 before them would support only the crime of manslaughter. It should be pointed out that the question is not whether the jury could have found manslaughter, but whether the evidence before the court was such that it did not support murder in the second degree.
The appellant relies upon Febre v. State, 158 Fla. 853, 30 So.2d 367, but that case may be readily distinguished from this one upon the essential fact of appellant's prior knowledge of his wife's misconduct. In the Febre decision it is expressly pointed out that "It does not appear that the defendant knew of any improper relationship between the deceased and the wife of the defendant, until the defendant opened the door, and saw this nude man."
There was ample evidence upon which the jury in the present case could find that the appellant was not in the least surprised by what he found after he kicked open the door of the second motel room. Reference need only be made to the detective agency report of a prior assignation and defendant's expressed intention to catch the parties in their act. We cannot say that the evidence so conclusively depicted a slaying in a sudden excess of passion as to preclude the element of malice. Cf. Collins v. State, 88 Fla. 578, 102 So. 880.
Appellant's third point urges reversible error in that "* * * the trial court erred in not permitting the defendant to put on testimony in his behalf as to his character and reputation in the community for violence or non-violence." The claimed error arose when the appellant called one Father Mekras as a defense witness; before the witness was questioned, the State asked for conference at the bench. The attorney for Appellant-Defendant stated, in answer to questioning from the trial judge, that the purpose in calling the witness was to prove defendant's general reputation in the community as to violence. The court expressly forbade the defendant to go into the subject. Thereupon the witness was excused.
The general rule, and the one recognized in Florida, is that the accused in a criminal prosecution may introduce evidence of his good character and reputation where such evidence has reference to the trait involved in the offense with which the defendant is charged. Hance v. State, 1858, 8 Fla. 56; Carnley v. United States, 274 F.2d 68 (5th Cir., 1960); 1 Wigmore, Evidence § 55 (3d ed. 1940). See also cases cited at 68 A.L.R. 1070, and 20 Am. Jur., Evidence § 324 (1939). The State does not controvert this rule but argues that the court's refusal to permit the testimony was a harmless error because (1) the appellant admitted the commission of the act of violence and (2) the appellant successfully presented other evidence to the same effect.
We cannot accept the State's position. Two of the basic issues which the jury was to consider were (1) whether the appellant committed the acts admitted while in a state of legal provocation and (2) whether at the time of the acts the appellant was legally responsible for his acts. We have previously considered the first two points presented by the appellant, and in each case we have pointed out that the ultimate decision under the record in this case lay with the jury. The evidence excluded was such that it might have influenced the jury upon either or both of the issues discussed.
The appellant has presented four other points which we need not discuss because of our conclusion that a new trial must be granted. The points presented but not discussed would have in each instance resulted in a new trial if the position advanced by the appellant had been sustained. Nevertheless, we have examined these points to determine if error was demonstrated because if such error were demonstrated, the trial court should have the benefit of our opinion at the new trial. We hold that appellant's remaining points did not present reversible error.
*190 We have found it necessary to discuss appellant's first two points even though no error was in our view demonstrated because a reversal upon either of the first two points would have required a judgment of not guilty upon the charges of murder in the second degree.
The judgment and sentence in each case are set aside and the causes remanded for a new trial.