CANADY, J.,
dissenting.
The conclusion that fundamental error occurred in this case flows from Florida’s jury pardon doctrine[6] — a doctrine that is at odds with both federal law and the law of the vast majority of the states.[7] Because I conclude that Florida’s law regarding the jury pardon power is inconsistent with the pertinent rule of criminal procedure, embeds contradiction in the jury instruction process, encourages irrational jury verdicts, and is corrosive of the rule of law, I dissent. I would repudiate the jury pardon doctrine and approve the Second District Court of Appeal’s determination that Haygood’s conviction should be affirmed.
This case dramatically illustrates the perverse consequence of the jury pardon doctrine. A retrial is ordered to correct an error in instruction regarding a lesser included offense, when it is manifest beyond any doubt that no rational juror, acting on the basis of the facts and a correct understanding of the law, could determine the defendant to be guilty of the lesser offense and innocent of the charged offense. This result is reached because under Florida law — as articulated by this Court in the jury pardon doctrine — defendants have a fundamental right for the jury to be correctly instructed on one-step-removed necessarily lesser included offenses.
After first discussing why there was no evidentiary basis in this case for an instruction on manslaughter by act, this dissent then turns to a review of Florida’s jury pardon doctrine — which provides the basis for requiring instructions with respect to necessarily lesser included offenses that lack an evidentiary basis and for the conclusion that the failure to provide correct instructions regarding such offenses constitutes fundamental error. This dissent then explains why the majority’s determination that fundamental error occurred in this case is inconsistent with the general standard for determining fundamental error in jury instructions. This dissent concludes with an examination of *747 the flaws in Florida’s jury pardon doctrine and a brief summary of the federal case law rejecting the jury pardon doctrine.
Here, “Haygood’s unambiguous admission that he intended to strike, head butt, choke, and trip” the victim — who was Hay-good’s girlfriend — while “in a blind rage” not only “eliminated” manslaughter by culpable negligence “as a viable lesser offense,” but also eliminated manslaughter by act as a viable lesser offense. Majority op. at 737, 742. After head-butting and choking the victim, Haygood pulled her legs out from under her. As a consequence, the victim fell and hit her head on the concrete. When she then sat up and leaned on Haygood, he elbowed her in the chest and she collapsed. Expert medical testimony established that the cause of the victim’s death was neck trauma and blunt force trauma to the head. The uncontested facts here unequivocally set this case in the category of second-degree murder as distinct from manslaughter by act.
Haygood’s conduct indisputably constituted acts “imminently dangerous to another and evincing a depraved mind regardless of human life.” § 782.04(2), Fla. Stat. (2012). And there is no evidentiary basis for concluding that Haygood acted in a “sudden heat of passion, aroused by adequate provocation,” which would effectively negate the depraved mind element of second-degree murder and thus provide legal “mitigation of the crime from murder to manslaughter.” Febre v. State, 158 Fla. 853, 30 So.2d 367, 369 (1947). For a homicide to be mitigated in that manner, there must be a “temporary suspension or overthrow of the reason or judgment of the defendant by the sudden access of passion.” Id. (emphasis added). Such a sudden outburst or attack of passion can exist only where there is an immediate provocation, and “the slayer cannot take time and [deliberate] upon the wrong and act upon an impulse to avenge.” Collins v. State, 88 Fla. 578, 102 So. 880, 882 (1925).
A defendant who has brooded on a prior wrong and has nursed his resentment and anger into a full-blown rage is not one who lacked a depraved mind because he was subject to “a sudden access of passion.” Here, the evidence viewed in the light most favorable to Haygood establishes that he attacked the victim in the course of an argument concerning an act of infidelity by the victim two years earlier, of which Haygood had become aware several months earlier. During the argument, Haygood knocked the victim down multiple times. The victim got up each time, until the final time she was struck. Each time the victim got up, Haygood continued his attack. Haygood admitted to law enforcement that he intended to strike the victim but asserted that killing her was an accident. These circumstances are far removed from those “heat of passion” manslaughter cases in which one spouse has discovered the other spouse in an act of adultery. See Febre, 30 So.2d at 369; Auchmuty v. State, 594 So.2d 859, 859-60 (Fla. 4th DCA 1992); see also Palmore v. State, 838 So.2d 1222, 1224 (Fla. 1st DCA 2003) (involving an unmarried couple who lived together and raised their child together).
No circumstance — neither a sudden heat of passion nor any other relevant circumstance — is present here that could provide any basis for a rational jury to return a verdict for manslaughter by act rather than for second-degree murder. The depraved mind element and all the other elements of second-degree murder manifestly were proven beyond a reasonable doubt at trial and could not have been rejected by any rational juror. Accordingly, there was no evidentiary basis in this *748 case for an instruction on manslaughter by act.[8]
But, of course, Florida’s jury pardon doctrine renders the lack of an evidentiary basis for an instruction totally irrelevant. The connection between the jury pardon doctrine and the requirements regarding instructions on necessarily lesser included offenses is well established in Florida law. We expressly identified that connection in State v. Wimberly, 498 So.2d 929, 932 (Fla.1986): “The requirement that a trial judge must give a requested instruction on a necessarily lesser included offense is bottomed upon a recognition of the jury’s right to exercise its ‘pardon power.’ ” (Citing State v. Baker, 456 So.2d 419, 422 (Fla.1984)).
Unfolding the full implications of the jury pardon doctrine, we have treated the failure to provide a correct instruction on a one-step-removed necessarily lesser included offense as per se reversible error and as fundamental error without regard to whether there is any evidentiary basis for an instruction on the lesser offense. See State v. Lucas, 645 So.2d 425, 426-27 (Fla.1994) (holding that “when a defendant has been convicted of either manslaughter or a greater offense not more than one step removed, ... failure to explain justifiable and excusable homicide as part of the manslaughter instruction always” results in fundamental and per se reversible error, “regardless of whether the evidence could support a finding of either justifiable or excusable homicide”); State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978) (relying on need for jury to be given “a fair opportunity to exercise its inherent ‘pardon’ power by returning a verdict of guilty as to the next lower crime” to support holding that “failure to instruct on the next immediate lesser-included offense (one step removed) constitutes error that is per se reversible”); Lomax v. State, 345 So.2d 719, 720-21 (Fla.1977) (referring to “policy concept of ‘jury pardon’ ” and holding that failure to instruct on a lesser-included offense constitutes per se reversible error regardless of whether the evidence to convict the defendant on the greater offense is overwhelming based on the jury pardon rationale) (disapproved in situations involving necessarily lesser included offenses that are multiple steps removed from the principal offense by Abreau, 363 So.2d at 1064).
The analysis in State v. Montgomery, 39 So.3d 252 (Fla.2010) — which provides the basis for the majority’s decision in this case — was predicated on the jury pardon power. In concluding that an incorrect instruction regarding an element of a one-step-removed necessarily lesser included offense resulted in fundamental error, the Montgomery Court relied on this proposition: “A jury must be given a fair opportunity to exercise its inherent ‘pardon’ power by returning a verdict of guilty as to the next lower crime.” 39 So.3d at 259 (quoting Pena v. State, 901 So.2d 781, 787 (Fla.2005)).[9]
*749 In effect, we have determined that defendants have a fundamental right to the availability of a jury pardon. This right we have recognized is more accurately described as the right to the availability of a partial jury nullification. The failure to empower the jury to accomplish such a partial jury nullification is treated as a structural defect that necessarily vitiates the defendant’s right to a fair trial. Nothing in the Florida Constitution, the Florida Statutes, or the Florida Rules of Criminal Procedure supports our recognition of such a right of access to a partial jury nullification. Florida’s jury pardon doctrine is a judicial creation that is radically flawed.
The conclusion that there was fundamental error in this case is inconsistent with our general standard for determining fundamental error in jury instructions.
[F]or jury instructions to constitute fundamental error, the error must “reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Further, “fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.”
Taylor v. State, 62 So.3d 1101, 1119 (Fla.2011) (quoting Garzon v. State, 980 So.2d 1038, 1042 (Fla.2008)) (citations and some internal quotation marks omitted). In any case where the evidence supports the jury’s verdict of guilt on the charged offense and no error was made in the instructions regarding that offense, it is hard to fathom how an error in an instruction regarding a lesser included offense would properly be considered an error without which “a verdict of guilt could not have been obtained.” But the departure from our general doctrine of fundamental error is magnified where — as in the majority’s decision here — an error in an instruction regarding a lesser included offense is declared fundamental even though there is no evidentiary basis for an instruction on that offense. The “validity of the trial itself’ is said to be vitiated because the jury was not correctly instructed on an inapplicable lesser offense and instead was fully afforded the opportunity to act in an irrational and lawless manner. This is a far cry from the cases in which we have held that fundamental error occurred because a defendant was convicted of an offense and the jury was not properly instructed concerning the elements of that offense. See Gerds v. State, 64 So.2d 915, 916 (Fla.1953); Reed v. State, 837 So.2d 366, 369 (Fla.2002).
Contrary to the logic of the jury pardon doctrine, interference with an opportunity for the jury to carry out a partial jury nullification does not undermine the validity of the trial. No defendant has the right to a trial in which the judge facilitates the jury’s acting in disregard of the law.
An extended discussion of the flaws in the Florida law regarding the jury pardon power is contained in Justice Shaw’s dissent in Wimberly, 498 So.2d at 932-935. Justice Shaw explained his view that the doctrine “sacrifices the truth-finding process on the altar of the ‘jury pardon’ by injecting unnecessary confusion into a *750 criminal prosecution.” Id. at 982. Justice Shaw observed that “[i]nstructing the jury on necessarily lesser included offenses serves only two legitimate purposes: to prevent a miscarriage of justice by enabling the jury to choose the true verdict and to dispose of all criminal charges from the episode in one prosecution.” Id. at 933. Justice Shaw concluded that it was a deviation from those purposes to “allow the jury pardon to be used to arrive at a verdict contrary to the evidence and contrary to the oaths of the jurors.” Id. Florida’s jury pardon doctrine is thus inconsistent with “the responsibility of the courts to minimize potential jury capriciousness by providing instructions on matters of law which set legal standards and channel jury deliberations toward rational verdicts.” Id. at 934.[10]
The jury pardon doctrine encourages jurors to violate the oath they swear and to ignore the basic instructions they are given. Jurors in a criminal trial are required to swear or affirm that they “will well and truly try the issues between the State of Florida and the defendant and render a true verdict according to the law and the evidence.” Fla. R.Crim. P. 3.360 (emphasis added). Jurors are instructed that if they “decide that the main accusation has not been proved beyond a reasonable doubt, [they] will next need to decide if the defendant is guilty of any lesser included crime.” Fla. Std. Jury Instr. (Crim.) 3.4. The instruction given to jurors regarding the rules for deliberation contains this statement:
You must follow the law as it is set out in these instructions. If you fail to follow the law, your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make a wise and legal decision in this matter.
Fla. Std. Jury Instr. (Crim.) 3.10. The standard verdict form provided to jurors specifically addresses the responsibility of jurors with respect to lesser included offenses. The verdict form states that the jurors “may find the defendant guilty as charged ... or guilty of such lesser included crime as the evidence may justify or not guilty.” Fla. Std. Jury Instr. (Crim.) 3.12. The verdict form also contains this unequivocal instruction: “If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt.” Id. (emphasis added). The jury pardon doctrine cannot be reconciled with the juror’s oath or any of these provisions of the standard jury instructions.
Nor can the doctrine be reconciled with the provision contained in Florida Rule of Criminal Procedure 3.510(b) that “[t]he judge shall not instruct on any lesser included offense as to which there is no evidence.” The jury pardon power has been used to justify denying any application of this provision to necessarily lesser included offenses. See Wimberly, 498 So.2d at 930. But there is no textual basis for concluding that the rule, which refers unequivocally to “any lesser included offense for which there is no evidence,” only applies to permissive lesser included offenses. The only reasonable way to read this provision of rule 3.510(b) is as a requirement that there be an evidentiary *751 basis for any lesser included offense— whether permissive or necessarily included — before the judge provides the jury with an instruction on that lesser offense. Such an evidentiary basis does not exist if — based on the evidence adduced at trial and the applicable law — no rational juror could acquit the defendant of the greater offense.
With respect to offenses against the United States, it is well established “that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.” Keeble v. United States, 412 U.S. 205, 208, 98 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Long ago, in Sparf v. United States, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), the Supreme Court rejected the argument that juries possess the power to return a verdict for a lesser included offense that is without an eviden-tiary basis.
In Sparf, the Supreme Court held that it “is not error” “[t]o instruct the jury in a criminal case that the defendant cannot properly be convicted of a crime less than that charged, or to refuse to instruct them in respect to the lesser [offenses] that might, under some circumstances, be included in the one so charged,” where there is “no evidence whatever upon which any verdict could be properly returned except one of guilty or one of not guilty of the particular [offense] charged.” Id. at 103, 15 S.Ct. 273. The Court concluded that “Congress did not intend to invest juries in criminal cases with power arbitrarily to disregard the evidence and the principles of law applicable to the case on trial.” Id. at 63, 15 S.Ct. 273. Where there was no evidentiary basis for the conclusion that the defendant was innocent of the charged offense but guilty of the lesser offense, “[a] verdict of guilty of an offense less than the one charged would have been in flagrant disregard of all the proof, and in violation by the jury of their obligation to render a true verdict.” Id. at 63-64, 15 S.Ct. 273. The Court condemned such a verdict as an “exercise by the jury of the power to commute the punishment for an [offense] actually committed, and thus impose a punishment different from that prescribed by law.” Id. The Court further observed that “[p]ublic and private safety alike would be in peril, if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves.” Id. at 101, 15 S.Ct. 273.
In Roberts v. Louisiana, 428 U.S. 325, 334, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the Supreme Court invalidated Louisiana’s mandatory death sentence statute because under that statute “every jury in a first-degree murder case is instructed on the crimes of second-degree murder and manslaughter and permitted to consider those verdicts even if there is not a scintilla of evidence to support the lesser verdicts.” The Court concluded that the sentencing scheme “not only lacks standards to guide the jury in selecting among first-degree [murders], but it plainly invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty is inappropriate.” Id. at 335, 96 S.Ct. 3001. The Court condemned the “element of capriciousness” that arose from “making the jurors’ power to avoid the death penalty dependent on their willingness to accept this invitation to disregard the trial judge’s instructions.” Id.
Subsequently, in Beck v. Alabama, 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held unconstitutional a death sentence that was imposed “after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a *752 lesser included non-capital offense, and when the evidence would have supported such a verdict[.]” In Hopper v. Evans, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), consistent with its reasoning in Roberts, the Supreme Court held that “due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction.” The Court concluded that because the evidence “affirmatively negated any claim that [the defendant] did not intend to kill the victim” during the robbery in which the homicide occurred, “[a]n instruction on the offense of unintentional killing during this robbery was therefore not warranted.” Id. at 613, 102 S.Ct. 2049.
Roberts, Beck, and Hopper addressed challenges to sentences of death and were — as Hopper, 456 U.S. at 611, 102 S.Ct. 2049 explained — “concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided.” But as Justice Shaw recognized in his dissenting opinion in Wimberly, 498 So.2d at 934, there is no reason that the purpose of avoiding arbitrary and capricious results in jury verdicts should be limited to the context of death penalty cases.
The existence of the jury’s unreviewable power to return a nullification verdict— that is, a verdict acquitting a defendant the jury knows to be guilty under the law— does not mean that courts should either encourage nullification verdicts or facilitate partial nullification under the guise of the jury pardon power. Where a jury returns a nullification verdict or a partial nullification verdict, the verdict reflects the jury’s “assumption of a power which they had no right to exercise, but to which they were disposed through lenity.” Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). A “defendant has no right to invite the jury to act lawlessly.” United States v. Perez, 86 F.3d 735, 736 (7th Cir.1996). Nor does a defendant have the right for the judge to invite the jury to act lawlessly. “Although jurors have the capacity to nullify, it is not the proper role of courts to encourage nullification.” United States v. Polouizzi, 564 F.3d 142, 162-63 (2d Cir.2009). And it is not the proper role of courts to provide instructions which facilitate verdicts convicting of lesser offenses for which there is no evi-dentiary basis. Such partial nullification verdicts — no less than traditional nullification verdicts — “encourage the substitution of individual standards for openly developed community rules,” “are lawless ... and constitute an exercise of erroneously seized power.” United States v. Washington, 705 F.2d 489, 494 (D.C.Cir.1983).
Accordingly, I would recede from our decisions that require the giving of instructions with respect to necessarily lesser included offenses where there is no eviden-tiary basis for acquitting the defendant of the charged offense and returning a conviction for the lesser offense. In this case, I would reject Haygood’s claim of fundamental error. The decision of the Second District Court of Appeal affirming Hay-good’s conviction should not be disturbed.
POLSTON, C.J., concurs.

. See John F. Yetter, Truth in Jury Instructions: Reforming the Law of Lesser Included Offenses, 9 St. Thomas L.Rev. 603 (1997) (discussing Florida law on entitlement to "jury pardon” and providing an in depth history).

. Iowa and Louisiana are the only other states that have similar jury pardon doctrines that ignore whether the evidence warrants the trial court instructing on a necessarily lesser included offense. See, e.g., State v. Jeffries, 430 N.W.2d 728, 737 (Iowa 1988) (holding “that Iowa trial courts shall no longer be required to review the record to determine whether there is sufficient evidence to support a verdict for a lesser-included offense”); State v. Peterson, 290 So.2d 307, 311 (La.1974) ("In Louisiana, when there is evidence to prove the greater offense, it is the jury's province to determine the existence vel non of lesser culpability and exercise the statutory right to return the manslaughter verdict.”).

. The concurrence asserts that “the evidence here supported a finding of manslaughter by act” but provides no analysis to support that assertion. Concurring op. at 746. In the concurrence there is no discussion of the relevant facts and no discussion of the relevant law. Neither the concurring opinion nor the majority opinion provides an explanation of how the victim's death resulting from Haygood’s sustained attack — an attack which indisputably was not brought on by a sudden provocation — could be considered by a rational jury to be manslaughter by act rather than second-degree murder.

. After citing Montgomery and the “principles underlying that decision,” the majority here states that its “decision is not based on the jury pardon doctrine and is not hinged on the right of the jury to issue a jury pardon despite the evidence.” Majority op. at 742. Similarly, the concurrence asserts that "[tjhis case is *749 not ... about the Court applying the jury pardon doctrine,” but about giving an erroneous instruction regarding “an offense that is one step removed from second-degree murder," the offense for which the defendant was convicted. Concurring op. at 744. The suggestion that there is no connection between the jury pardon doctrine and the requirements of Florida law concerning instructions on lesser included offenses disregards what our case law has said repeatedly about the connection between the jury pardon doctrine and instructions regarding necessarily lesser included offenses.

. Voicing similar criticism of Florida’s jury pardon doctrine, Professor John Yetter has stated: "A regime of jury instruction law exists in Florida that requires trial judges to ignore the evidence and invites juries to return illogical verdicts. Such a system destroys any possibility of the fair and consistent application of the law from case to case.... It is also against the great weight of authority in other jurisdictions.” Yetter, Truth in Jury Instructions: Reforming the Law of Lesser Included Offenses, supra note 6, at 610.