303 So.2d 632 (1974)
Robert Austin SULLIVAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 44750.
Supreme Court of Florida.
November 27, 1974.
*633 Denis Dean, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
DEKLE, Justice.
This cause comes before us on direct appeal from a conviction of murder in the first degree and of robbery, and a sentence of death imposed on appellant, in the circuit court of Dade County. Jurisdiction vests in this Court pursuant to Art. V, § 3(b)(1), Fla. Const.
Although appellant raises four separate points on appeal, and we have carefully weighed all of them and all of the record, only one of them requires our detailed consideration in this opinion, the Court finding appellant's other assertions of error to be without merit. The assignment of error to which we refer relates to a reference, deliberately elicited by the prosecuting attorney from a State witness, to a polygraph examination of the witness. This witness, one Reid McLaughlin, had also been charged with the victim's murder, along with the appellant. The witness pleaded nolo contendere to second degree murder pursuant to plea bargaining, but had not been sentenced at the time he testified. *634 Among the conditions of the plea bargain (under which McLaughlin ultimately received a life sentence) were the provisions that McLaughlin testify at appellant's trial, and that he take and pass a lie detector test. McLaughlin's testimony on direct examination was directly contrary to that of appellant, who also took the stand. Near the end of a brief cross-examination, the following exchange took place between defense counsel and McLaughlin:
"Q. Did anyone tell you that your sentence would depend on how your testimony turned out?
"A. Yes."
Upon redirect examination, the state attorney asked:
"Q. Now, sir, when you say that your sentence is going to be determined by your testimony is there any question in your mind what your sentence is going to be?
"A. No.
"Q. Has there been an agreement as to what your sentence is going to be?
"A. Yes.
"Q. What is that?
"A. Life."
There followed a brief side-bar conference, following which the State continued its redirect examination as follows:
"Q. Now, Reid, I believe you just indicated that the sentence is going to be life?
"A. Yes it is.
"Q. Was there any agreement if you testified in a particular way that you would get anything other than life?
"A. No.
"Q. When you said that your sentence is going to be determined by your testimony and would you explain to the jury what you meant?
"A. That I would have to have taken a polygraph test and passed it."
At this point, appellant's counsel objected, requested a side-bar conference, and moved for a mistrial. The trial judge found that the question was not calculated to evoke the answer given and denied the motion for mistrial. Defense counsel was asked whether he wished the jury instructed to disregard the reference to the polygraph test, but counsel declined the offer. In further proceedings the following morning, the State admitted with commendable candor that the question last above quoted "was intended to elicit that answer," and further indicated that McLaughlin had at that time already taken the polygraph test. Nonetheless, the trial court denied the renewed mistrial motion.
This Court has repeatedly stated that the results of a polygraph test are not admissible in evidence. Anderson v. State, 241 So.2d 390 (Fla. 1970); Kaminski v. State, 63 So.2d 339 (Fla. 1952). Appellant urges Kaminski as grounds for reversal. Upon close analysis we find Kaminski distinguished upon the facts. In Kaminski the witness was directly asked:
"Q. Holton, did you consent to and take a lie detector test while being examined by Mr. Henderson" (emphasis ours)
Defense counsel objected, but his objection was overruled and his motion denied, whereupon the prosecutor again asked:
"Q. Did you take such a test?
"A. I did." (emphasis ours)
In Kaminski, the witness clearly informed the jury that he had taken a polygraph test, defense counsel carefully attempted to cure the error at the trial court level, and the State's case depended entirely upon the testimony of the witness, whose credibility had been seriously shaken both by cross-examination and by the testimony of other *635 State witnesses. None of these factors is present in the instant cause, McLaughlin's testimony never having been seriously shaken, a large body of other evidence of appellant's guilt having been introduced, and, most importantly, McLaughlin never clearly stating that he had already taken the polygraph test. Indeed, the one ambiguous answer noted above is the sole reference to the polygraph.
We fail to see why the State engaged in needless "overkill" in bringing out the reference to the polygraph test, when the prosecutor well knew (or at the very least, should have known) that he was endangering his case by bringing up this matter when the courts of this state have repeatedly reversed convictions on the basis of references to the polygraph, Kaminski v. State, supra, and have otherwise indicated their inadmissibility.[1] For the prosecutor deliberately to elicit a reference to a polygraph examination in spite of our repeated holdings, especially in an obvious "overkill" situation such as was present here, needlessly places a burden on both the trial court judge who must rule on a mistrial motion and on the appellate courts upon review. We cannot condone such tactics and hereby strongly admonish prosecutorial authorities against them.
Nonetheless, the peculiar circumstances of this case compel a finding that there was no reversible error here. Although defense counsel was afforded an opportunity, by the trial judge sua sponte, to have the jury instructed to disregard the polygraph reference, counsel failed or chose not to avail himself of the instruction. It is well-established law that where the trial judge has extended counsel an opportunity to cure any error, and counsel fails to take advantage of the opportunity, such error, if any, was invited and will not warrant reversal.[2] Aside from this, however, we find no reversible error here. Although, as appellant contends, the reference to the polygraph, when considered in connection with McLaughlin's previous answers, could be interpreted by the jury as an indication that McLaughlin had already taken and passed the polygraph test, it could equally have been interpreted as an indication of McLaughlin's certainty that he would pass the test when he took it thereafter. We cannot know how the jury construed his answer, or what weight was given to it; therefore, to assert that it was construed as meaning he had already passed it would be pure speculation on our part. Reversible error cannot be predicated on conjecture. Singer v. State, 109 So.2d 7 (Fla. 1959). This is especially the case where, as here, the testimony in question does not naturally lead to one interpretation rather than another; we note that the witness said that as one of the conditions of receiving the life sentence he "would have to have taken a polygraph test and passed it," not that he "had taken" and passed a polygraph test. Taken as a whole, this portion of McLaughlin's testimony is just as reasonably interpreted to mean that: (1) he had not yet been sentenced; (2) that before he received a life sentence he would have to pass a polygraph test; and (3) that he had no doubt in his own mind that he would receive the life sentence. A logical inference is that he had no doubt that he would pass the polygraph test, not that he had already passed it. We also note that the witness never referred to the actual results of the polygraph test in any manner, and that the only mention of a polygraph test was the one answer discussed above. It all becomes too tenuous to support harmful error *636 that would likely have produced a different result if not present.
Without passing on the issue of whether the question on cross-examination concerning the relationship between the outcome of McLaughlin's testimony and his eventual sentence opened the door to a reference to the polygraph test condition of his plea bargain (the State contending that this was proper rehabilitation of the witness, in the nature of a showing that the State had good reason to attach credibility to his testimony), we observe that the evidence of appellant's guilt, including both the testimony of McLaughlin (a participant in the homicide) and appellant's prior confession is so overwhelming that we cannot say that this one utterance caused a miscarriage of justice which would necessitate a reversal of the conviction. We conclude that, under the peculiar circumstances presented here, the trial court did not commit reversible error in denying appellant's motion for mistrial.
We have examined the other assignments of error urged by appellant, and find them to be without merit. Accordingly, no reversible error appearing, the decision appealed from is hereby
Affirmed.
ADKINS, C.J., and ROBERTS and McCAIN, JJ., concur.
BOYD, J., concurs specially with opinion with which ERVIN, J., concurs.
OVERTON, J., concurs specially with opinion with which ADKINS, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
BOYD, Justice (concurring specially):
Prior to the enactment of Florida's present death penalty statutes, juries could grant life sentences instead of death penalties under the statutes which were invalidated by the United States Supreme Court in Furman v. Georgia.[1] The recent law in the State of Florida leaves the discretion of granting life sentences instead of a death penalty to the judges and provides for appropriate review of such sentences in this Court, with jury recommendations having no binding effect on judges.
In this case, the State admitted that it intentionally alluded to a lie detector test administered to a State witness and had this information entered into the record, although it was contrary to Florida law. A close examination of the record indicates that the jury had ample reason to find the Defendant guilty of first degree murder and robbery with or without the testimony referring to the lie detector test. Because the State erred, I feel that the circumstances of this case as reflected by the record should require that the conviction of first degree murder and robbery be sustained, but that the sentence should be reduced to life imprisonment.
ERVIN, J., concurs.
OVERTON, Justice (concurring specially).
I agree that the conduct of the trial prosecutor in purposely attempting to elicit from the accomplice-witness a reference to the polygraph test must be sharply condemned. This type of prosecutorial behavior cannot only bring about a mistrial; it can cause the loss of the entire case as well. Such is the import of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), where both the plurality and dissenting opinions suggest that the Fifth Amendment's Double Jeopardy Clause would apply to bar the reprosecution of a defendant whose mistrial is occasioned *637 by prosecutorial overreaching.[1] The Jorn decision is qualified in Illinois v. Somerville,[2] but this latter decision still condemns prosecutorial manipulation.
Fortunately in the present case the evidence, excluding the accomplice's testimony, was so clear and convincing as to leave no reasonable doubt but that the defendant was guilty of the crimes charged. Most noteworthy among this evidence was a detailed confession, which was dictated, personally corrected, and signed by the defendant after thrice being read his rights. This statement differed in no significant way from the testimony of the defendant's accomplice, McLaughlin, at trial.
When arrested, the defendant was wearing the victim's watch and had in his wallet several of the victim's credit cards, which he had been using to purchase various items. The shotgun, the tire iron, the pistol, and tape similar to that used to tape the victim's hands were found in Sullivan's car. Containers of money, similar to those used at the restaurant, were also found in his motel room.
Where independent evidence of guilt is overwhelming, a constitutional error can be rendered harmless. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). See also Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). In light of these decisions, I have little difficulty in concluding that the prosecutorial error in the present case was indeed harmless.
In addition to the evidence-weighing function implicit in our finding of harmless error, this Court has a separate responsibility in cases where a death sentence is imposed to determine independently whether the ultimate penalty is warranted. State v. Dixon, 283 So.2d 1 (Fla. 1973).
The following are the aggravating and mitigating circumstances in this cause:
McLaughlin and Sullivan, armed with a .38 caliber pistol belonging to Sullivan, entered and robbed a Howard Johnson's Restaurant after it had closed for the night. They abducted the assistant manager, taping his wrists behind his back. The manager, who at no time offered any resistance, was driven by Sullivan and McLaughlin to a swampy area. Sullivan told the manager that he would be released there without clothing. In reality, according to both McLaughlin's testimony and the defendant's own confession, they fully intended to murder the victim.
While walking, the victim slipped and fell. Sullivan then struck him twice on the back of the head with a tire iron, turned and asked McLaughlin for the shotgun, shot the victim with both barrels in the back of the head, reloaded, and discharged *638 both barrels again into the victim's head. After the killing, the defendant allegedly stated, "I don't feel no different."
At the time the crime was committed, the defendant was twenty-five years old and had no prior criminal record. He had attended the University of Miami for four years, though he had not actually received a degree. He had previously been employed for some eight or nine months as manager of the same Howard Johnson's he was convicted of robbing. There was no indication of deprivation in his background. McLaughlin, Sullivan's accomplice, was twenty years old and had a tenth-grade education. He pleaded no contest to second degree murder. It was agreed he would receive a life sentence if he testified at the defendant's trial.
The facts speak for themselves. This was an execution-type slaying. The sentence of death is appropriate and should be affirmed.
ADKINS, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] See Anderson v. State, 241 So.2d 390 (Fla. 1970), in which we held that defense counsel was not entitled to written results of a polygraph test given a co-defendant under the favorable evidence doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968).
[2] Coral Gables v. Levison, 220 So.2d 430 (Fla. App.3d 1969); Gagnon v. State, 212 So.2d 337 (Fla.App.3d 1968).
[1] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.
[1] At footnote 12 of the plurality opinion by Mr. Justice Harlan, the following dictum is found:

"... [W]here a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal, reprosecution might well be barred. Cf. United States v. Tateo [377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)] ... ." 400 U.S. at 485, n. 12, 91 S.Ct. at 557.
This proposition is stated in even stronger terms in surprising dictum by Mr. Justice Stewart, whose dissent was joined by Justices White and Blackmun:
"... On the other hand, there are situations where the circumstances under which the mistrial was declared may be such as to bar a future prosecution. One example is where a `judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused.' Gori v. United States, 367 U.S. 364, 369 [81 S.Ct. 1523, 1526, 6 L.Ed.2d 901]. I should suppose that whether misconduct of this kind occurs at the instance of the prosecutor or on the trial judge's sole initiative, there is no question but that the guarantee against double jeopardy would make another trial impermissible." [Emphasis supplied] 400 U.S. at 489, 91 S.Ct. at 559.
[2] Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).