348 So.2d 663 (1977)
Charles SEABROOK, Appellant,
v.
STATE of Florida, Appellee.
No. 76-1190.
District Court of Appeal of Florida, Second District.
August 3, 1977.
Jack O. Johnson, Public Defender, and A.J. Melkus, Sp. Asst. Public Defender, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant appeals the trial court's refusal to allow him to present evidence as to his reputation for peacefulness and tranquility at his trial for aggravated battery in which he was ultimately found guilty of the lesser offense of aggravated assault. We hold that this refusal was error and reverse.
Appellant's victim, Elizabeth Reed, was shot in the arm at approximately four or five o'clock on the morning of May 8, 1976. Appellant notified the police that the shooting had occurred, then took Ms. Reed to the hospital.
Two police officers testified at trial that appellant made a statement to them shortly after the incident occurred. The gist of the statement was that appellant and Ms. Reed had had an argument over the lateness of her return home; that appellant, intending *664 to shoot Ms. Reed to "show her that he meant business," had gotten his shotgun out of his car, returned to the house and shot Ms. Reed; and that he had then hidden the shotgun under the house before taking Ms. Reed to the hospital.
Ms. Reed testified on appellant's behalf. She stated that she knew of no reason why anyone would want to shoot her; that she and appellant had not quarreled on the night in question; and that she didn't think appellant could see her in the room at the time the shot was fired.
Appellant took the stand in his own defense and admitted shooting Ms. Reed, but testified that the shooting was accidental. He claimed that he was entering the darkened house carrying the gun when he tripped on a rug and the gun discharged. He denied making the statement attributed to him by the officers. He also denied having any intention to shoot Ms. Reed.
Ms. Reed was recalled as a defense witness after appellant had testified, at which time defense counsel sought to elicit her testimony as to appellant's reputation in the community for peacefulness and tranquility. Upon objection by the State, however, counsel was barred from this line of inquiry, primarily on the erroneous ground that such testimony is admissible only if self-defense is an issue.
The general rule in Florida is that a criminal defendant may introduce evidence of his good character and reputation where such evidence has reference to a trait involved in the offense with which he is charged. Norman v. State, 156 So.2d 186 (Fla.3d DCA 1963). Certainly one's lack of propensity toward violence is relevant to the trait of violence inherent in the commission of an aggravated battery or aggravated assault; so the trial court's refusal to allow testimony as to appellant's reputation with respect to that trait was error.
Moreover, we think it was reversible error in this case because such evidence was clearly corroborative of appellant's defense of accident and tended to negate the very heart of an essential element of the offense charged, to wit: an intentional threat of violence. Without it appellant stood naked in his swearing match with two police officers whose testimony constituted the guts of the case against him. In our view, there exists sufficient doubt that appellant had a fair trial, under the circumstances of this case, so as to warrant a new trial.
Reversed and a new trial is awarded.
HOBSON, Acting C.J., and McNULTY, J., concur.
SCHEB, J., dissents with opinion.
SCHEB, Judge, dissenting.
I agree that a defendant on trial for a crime of violence may introduce evidence of his reputation for peace and tranquility in the community. I dissent, however, from the majority on three grounds.
First, there is a serious question as to whether appellant was prevented from introducing such evidence in this case. Relevant portions of the trial transcript reveal that after defense counsel called the victim, Elizabeth Reed, the following transpired:
Q [MR. BADEN  defense counsel]: Do you know his [appellant's] reputation in the community for peacefulness and tranquility?
MR. ROBACK [prosecutor]: Your Honor, I object. That's got nothing to do 
THE COURT: This is not self defense question. The objection is sustained as to veracity.
Q [MR. BADEN]: Do you know his reputation for truthfulness and veracity?
A YES.
Q Would you believe him under oath? Is his reputation in the community good or bad?
A Good.
MR. ROBACK: I object again to reputation.
Q [MR. BADEN]: Is it good or bad?
A Good.
MR. BADEN: No further questions.
My reading of the transcript does not convince me the trial judge precluded the defense *665 counsel from inquiring further as to appellant's reputation for peace and tranquility. Admittedly, the colloquy is subject to interpretation; however, had the defense counsel perceived that the consequences of the court's ruling unduly restricted him from introducing evidence on this point, he should have requested a clarification of the ruling, and, if necessary, made a proffer of the testimony he expected to elicit. He did neither.
Second, even assuming arguendo that defense counsel was effectively precluded by the court from offering such evidence, the error was, in my opinion, harmless. The victim, Ms. Reed, was obviously a person who was in close relationship to appellant. Though their precise relationship is unclear, the record suggests she was to some extent dependent upon appellant for support of her children. Some references in the record even refer to her as appellant's wife; however, whether this is true or not cannot be determined. She was permitted to testify that appellant, who denied making the statement testified to by two police officers, had a good reputation for truthfulness. The jury quite obviously rejected her testimony on that point. It is difficult to believe the jury would have placed any greater credibility on her testimony that appellant, who shot her, had a good reputation in the community for peacefulness and tranquility. Defense counsel did not attempt to present any other witness on the question of appellant's reputation.
Third, appellant's guilt of aggravated assault was established before the jury by competent substantial evidence. The two sheriff's deputies who testified were both experienced law officers: Detective Hoss was a ten-year veteran of the department, and Detective Robertson a five-year veteran. Each said that he had advised appellant of his Miranda rights and that thereafter, while still at the hospital where the victim was treated, appellant had admitted shooting Ms. Reed during a domestic quarrel. Detective Robertson testified that appellant had stated:
"I didn't want to kill her. If I had meant to kill her, she would be dead. I wasn't but three feet from her and a good shot with a shotgun... . I wanted her to know I meant business."
Robertson further explained appellant admitted hiding the shotgun under the house and taking the victim to the hospital.
The law in Florida is that a judgment of conviction should not be reversed unless the error complained of injuriously affected the substantial rights of the defendant. Brantley v. State, 279 So.2d 290 (Fla. 1973); Casso v. State, 182 So.2d 252 (Fla.2d DCA 1966); Section 924.33, Florida Statutes (1975). Even an error of constitutional magnitude can be rendered harmless where evidence of guilt is overwhelming. Sullivan v. State, 303 So.2d 632 (Fla. 1974). If there was an error on the part of the trial judge, it was not prejudicial to appellant, and did not substantially affect his rights or result in any miscarriage of justice.
That a defendant is entitled to a fair trial but not a perfect one is frequently quoted by the courts and is a recognized principle of our criminal jurisprudence. In my opinion, appellant was accorded a fair trial and there was evidence of his guilt beyond any reasonable doubt.
Although this court has ordered a new trial, I feel it necessary to comment on some aspects of the sentence imposed. This offense was committed on May 8, 1976, and appellant was convicted of aggravated assault on June 30, 1976. He was sentenced to six years in prison; the last three years were suspended and appellant was to be placed on probation for that period. The sentence specifically provided that no credit was to be given for time served.
Aggravated assault is a third degree felony, Section 784.021(2), Florida Statutes (1975); and the maximum prison sentence which may be imposed for such a crime is five years. Section 775.082(3)(d), Florida Statutes (1975). It is no longer within the authority of the sentencing court to extend probation beyond the statutory maximum sentence. Watts v. State, 328 So.2d 223 (Fla.2d DCA 1976); Magnin v. State, 334 So.2d 638 (Fla.2d DCA 1976). The sentence *666 imposed on appellant therefore exceeded the maximum punishment provided by statute.
The sentencing court also erred by not allowing appellant credit for time served while awaiting sentence. The allowance of such credit is mandatory. Section 921.161(1), Florida Statutes (1975). Credit for time served must be given even where there is a split sentence probation order, State v. Jones, 327 So.2d 18 (Fla. 1976); as well as where the mandatory three-year minimum sentence is applicable. Lingo v. State, 344 So.2d 629 (Fla.2d DCA 1977). So the fact that appellant was given a mandatory three years in a split sentence probation order does not obviate his entitlement to credit for the time he served in the county jail awaiting sentence.
I would affirm the conviction, vacate the sentence, and remand for resentencing. Therefore, I respectfully dissent from the majority opinion.