366 So.2d 782 (1978)
Jose Miguel CAMPOS, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-437.
District Court of Appeal of Florida, Third District.
December 19, 1978.
Rehearing Denied February 12, 1979.
Bennett H. Brummer, Public Defender and Karen M. Gottlieb, Asst. Public Defender, for appellant.
*783 Robert L. Shevin, Atty. Gen. and Anthony C. Musto, Asst. Atty. Gen., and Sharon Langer, Legal Intern, for appellee.
Before PEARSON, HENDRY and BARKDULL, JJ.
HENDRY, Judge.
Appellant/defendant, Jose Miguel Campos, was charged by information with the second degree murder of Jose Perez. A jury returned a verdict of guilty to the crime charged and appellant was sentenced to life imprisonment in the state penitentiary.
He now appeals his conviction and sentence raising the following issue:
"Whether the trial court erred in excluding two defense witnesses whose testimony was essential to the defendant's defense of self-defense, thereby violating the defendant's right to present a defense, as guaranteed by the sixth and fourteenth amendments to the Constitution of the United States Article I, §§ 9 and 16 of the Constitution of the State of Florida."
After a careful review of the record, we believe the trial court did so err, and accordingly, we reverse appellant's conviction and sentence.
Sub judice, appellant was charged with second degree murder. Appellant's defense to the charge was that the shooting had been done in self-defense. It appears from the record that the deceased, Jose Perez, had repeatedly threatened appellant's common-law-wife, Irma Palma, and had on two occasions, sexually assaulted her. Perez had told Ms. Palma that his "real problem" was not with her, but with appellant and "tell Miguel to be careful." Palma had told appellant about the deceased's acts and threats.
On the night of the alleged murder, one Pedro Enriquez was walking behind appellant on Southwest 8th Avenue and 2nd Street in the City of Miami. When appellant got to the corner of the street, Enriquez saw the deceased's car opposite appellant. The deceased then allegedly exited his vehicle, shouted various obscenities at appellant, and threatened to kill him. Enriquez stated that he saw something in the driver's hand, but was unable to discern whether the driver held a knife, gun, or stick. Enriquez further stated that he saw appellant run from the area with the deceased chasing him in his auto against the flow of traffic on the street, which was limited to one-way traffic.
Approximately one hour after Enriquez witnessed the above, Perez was found dead in his vehicle with four gunshot wounds. There were no witnesses to the shooting, however, within two hours after the discovery of the body, appellant voluntarily appeared at police headquarters and gave a statement to a detective. In that statement, appellant claimed that he was in fear of his life by virtue of various threats made by the deceased to appellant's wife and directly to him. He further claimed that on several occasions, he had called the police but that no action had been taken on his complaints.
Appellant then told the detective that on the day in question, Perez had chased him in his auto and had threatened his life. Appellant, however, had made it safely to his house, but shortly thereafter, left his home to make a telephone call, as he had no phone in his house. Appellant stated that because of the deceased's threats and his fear of the deceased, he took his gun with him when he left to make the call.
Appellant further stated that as he was returning to his home, after making the call, he noticed a car parked next to him. The deceased was in the car and called out to appellant, "Now you're not going to get away, you son of a bitch." The deceased then allegedly reached toward his waist. At that point, appellant took his gun from the box in which he had carried it and, according to his testimony, fired a warning shot in the air. The deceased then attempted to exit from his car and appellant, allegedly in fear of his life, then fired a number of fatal shots directly at Perez.
During the course of the trial, defense counsel attempted to present Roberto Garcia, *784 the Columbian Counselor General, as a character witness for appellant. It was proffered to the court that Garcia personally knew appellant's reputation in the community for peacefulness. The trial judge, however, refused to permit Garcia to testify.
The court next excluded one Marta Morales from testifying for the defense. It was proffered to the court that Mrs. Morales would have testified that she had seen a man fitting Perez's description attack appellant's wife with a pair of scissors and had told appellant of the incident prior to the slaying of Perez. The court ruled that the testimony proffered was, however, irrelevant, as Morales could not identify the attacker by name.
It would appear that, based upon the exclusion of the above two witnesses, the trial judge significantly precluded the presentation of appellant's self-defense theory. Roberto Garcia would have testified that appellant had a reputation in the community for peacefulness, while Marta Morales would have confirmed the reasonableness of appellant's apprehension of Perez.
While the identification problem in Morales's testimony may not have raised such testimony past the level of circumstantial evidence of Perez's assault upon Ms. Palma, the purpose of such testimony was not to prove that Perez had actually attacked and raped Palma. Rather, the purpose of the testimony was to corroborate the story that Ms. Palma had previously told appellant, i.e., that Perez had threatened both Palma and appellant, and assaulted Palma while brandishing a pair of scissors. Thus, this testimony would have further served to establish before the jury appellant's apprehensive state of mind when he was allegedly confronted with the deceased, and the fact that Ms. Morales could not identify the perpetrator by name (though she could have described the attacker) should not have precluded her from testifying.
The law is well settled that when the appropriate predicate is met, by the showing of an overt act by the deceased at or about the time of the slaying which reasonably indicates a need for action by the defendant in self-defense, evidence of the specific violent acts of the deceased is admissible, when offered in support of a defense of self defense, for the limited purpose of illustrating the defendant's state of mind at the time of the incident. Rolle v. State, 314 So.2d 167 (Fla.3d DCA 1975); Williams v. State, 252 So.2d 243 (Fla. 4th DCA 1971). Sub judice, the defense had showed overt acts on the part of the deceased at or near the time of the slaying, i.e. chasing appellant by car, threatening appellant's life, allegedly reaching for a weapon, and therefore, the Morales testimony should have been permitted as an indication of appellant's state of mind and it was error to exclude same.
As for Roberto Garcia, it is our view that the exclusion of his testimony was likewise error. An accused is entitled to introduce evidence of his good character and reputation in the community, where that evidence refers to traits involved in the offense with which the defendant is charged. Norman v. State, 156 So.2d 186 (Fla. 3d DCA 1963). Garcia's testimony would have been that appellant enjoyed the reputation in the community for non-violence. One's lack of propensity toward violence is certainly relevant to the trail of violence inherent in a second degree murder charge. Norman v. State, supra, and see Seabrook v. State, 348 So.2d 663 (Fla. 2d DCA 1977).
In conclusion, it is our opinion that the trial court's exclusion of these two defense witnesses deprived the defendant of relevant and material testimony in support of his defense, and thus, amounts to reversible error warranting a new trial.
Reversed and remanded for a new trial.