Robert A. SULLIVAN,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, etc., et al.,
Respondents-Appellees.

No. 81–5843.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1983.

Rehearing and Rehearing En Banc
Denied May 17, 1983.

Roy E. Black, Miami, Fla., for petitioner-appellant.

Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

FAY, Circuit Judge:

Robert A. Sullivan appeals the district court's denial of his habeas corpus petition challenging his conviction for first degree murder and sentence of death and raises five issues: 1) whether the death sentence was unconstitutionally imposed on the basis of the state trial court's findings or instructions to the jury; 2) whether petitioner Sullivan received ineffective assistance of counsel; 3) whether excusal of four prospective jurors for cause violated his constitutional right to a fair trial; 4) whether the testimony of a state witness regarding a polygraph constituted constitutional error; and, 5) whether the denial of petitioner's leave to amend was improper. After careful consideration of the issues raised on appeal, we affirm the denial of the writ of habeas corpus.

### Facts

On the night of April 8, 1973, Sullivan, along with Reid McLaughlin, robbed a Howard Johnson's restaurant in Homestead, Florida, where Sullivan had formerly been employed. Sullivan and McLaughlin abducted the assistant manager, Donald Schmidt, taped his wrists behind his back, and drove him to a swampy area. Sullivan struck Schmidt twice on the back of the head with a tire iron and then shot him twice in the back of the head, each time with both barrels of a double barrel shotgun.

When Sullivan was arrested, the police found Schmidt's credit cards and watch. The police also found a shotgun, a handgun, white adhesive tape and a tire iron in Sullivan's car. Sullivan subsequently confessed to the murder of Schmidt and implicated McLaughlin. McLaughlin also confessed, but entered into a plea bargain with the state. McLaughlin was promised a life sentence in exchange for his testimony at Sullivan's trial.

Sullivan was convicted by a jury in Dade County, Florida in November 1973. The jury recommended a sentence of death and the state trial judge imposed the death penalty pursuant to Fla.Stat. § 921.141 (1973).

Sullivan appealed to the Florida Supreme Court, which affirmed. *Sullivan v. State*, 303 So.2d 632 (1974). The United States Supreme Court denied certiorari. *Sullivan v. Florida*, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). Sullivan, represented by new counsel, filed a motion in the state

court for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. The state court held an evidentiary hearing without Sullivan's presence on the sole issue of ineffective assistance of counsel. The court thereafter denied the motion. Sullivan appealed to the Florida Supreme Court. While that appeal was pending, the Governor of Florida signed a death warrant for Sullivan. The Florida Supreme Court denied Sullivan's motion for stay of execution and affirmed the denial of Sullivan's motion for post-conviction relief. *Sullivan v. State,* 372 So.2d 938 (Fla.1979).

Sullivan then filed a petition for writ of habeas corpus and motion for stay of execution pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Florida. The district court granted the motion for stay of execution. The magistrate conducted an evidentiary hearing on Sullivan's habeas corpus petition. Sullivan testified and was given every opportunity to present evidence. After post-hearing submissions of briefs by the parties, the magistrate entered a lengthy report recommending that the petition for writ of habeas corpus be denied on its merits. State and Sullivan filed written objections to the magistrate's report and recommendation. The district court entered its Final Order of Dismissal on June 4, 1981, denying the petition for writ of habeas corpus. This appeal followed.

*Ineffective Assistance of Counsel*

On this appeal, Sullivan contends he was denied his sixth amendment right to the effective assistance of counsel at the penalty phase and on direct appeal to the Florida Supreme Court. The magistrate held an evidentiary hearing on the ineffective assistance of counsel claims,[1] and found that counsel was "reasonably likely to render and did render reasonably effective assist-

ance of counsel," applying the standard enunciated in *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *adhered to en banc,* 289 F.2d 928 (5th Cir.) *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).[2] The district court concurred in the magistrate's conclusions and found that "petitioner's main claim that he was denied effective assistance of counsel [was] totally without merit. The record clearly demonstrate[d] that his counsel throughout discharged their grave and solemn duty to petitioner in a manner consistent with the highest technical and ethical standards of their profession." (R., Vol. III, p. 589, Final Order of Dismissal).

Whether defense counsel has rendered adequate assistance is a mixed question of law and fact that requires the application of legal principles to the historic facts of the case. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). The district court's conclusion on this issue is entitled to no special deference and this court must review counsel's performance and determine independently whether the constitutional standard was met. *Proffitt v. Wainwright,* 685 F.2d 1227 at 1247 (11th Cir. 1982), *citing, Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir.1981). Similarly, the state courts' finding that Sullivan's ineffective assistance of counsel claim was without merit, *Sullivan v. State,* 372 So.2d at 939, is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Goodwin v. Balkcom,* 684 F.2d 794 at 803 (11th Cir.1982).

We must assess whether counsel's performance constituted "reasonably effective assistance." The standard is not error-less counsel or counsel judged with the benefit of 20/20 hindsight. *Proffitt v. Wain-*

---

1. At this three day hearing, evidence was presented concerning Sullivan's pretrial representation by attorney Raymond Windsor, as well as Sullivan's representation through appeal by attorney Denis Dean.

2. As stated by the court:

We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.
280 F.2d at 599.

*wright,* at 1247; *Mylar v. State,* 671 F.2d 1299, 1301 (11th Cir.1982). Rather, the assistance rendered must be evaluated from the perspective of counsel, taking into account all the circumstances of the case, but only as those circumstances were known to counsel at that time. *Proffitt v. Wainwright,* at 1247. Although on this appeal Sullivan only raises counsel's effectiveness during the penalty phase and on direct appeal to the Florida Supreme Court, a consideration of the totality of circumstances encompasses the quality of counsel's assistance from the time of appointment through the appeal. *Goodwin v. Balkcom,* 684 F.2d at 804 (11th Cir.1982).

Sullivan's contention that counsel rendered ineffective assistance at the penalty phase is based on his assertion that "it does not seem inappropriate to require counsel in a capital case to give an extensive and perhaps impassioned plea for his client's life." Brief of Appellant at 41. Sullivan also asserts that counsel did not make appropriate objections or sufficiently rebut the prosecutor's argument requesting the death penalty. We decline to adopt a rigid rule which would require counsel to argue to the jury in a specific manner or to make particular objections during the penalty phase of a capital case. Each case turns on its own facts and the effectiveness of counsel must also be judged on the facts and conduct of those involved in each case. *Goodwin v. Balkcom,* at 804. We have carefully reviewed counsel's performance during the penalty phase, in light of the totality of the circumstances as they were known to counsel at that time, and find that counsel's performance did not fall below the "reasonably effective assistance" standard.

Sullivan also contends that counsel was ineffective because he did not raise certain issues on direct appeal to the Florida Supreme Court. Counsel did file a brief on appeal which argued and supported several substantive legal claims, such as the admission of testimony relating to a poly-

graph. This is not a situation similar to *Mylar v. Alabama,* 671 F.2d 1299, 1302 (11th Cir.1982), where we held that failure to file a brief in a nonfrivolous appeal falls below the standard of competency expected and required of counsel in criminal cases and therefore constitutes ineffective assistance of counsel.[3] Sullivan's appellate counsel functioned as an active advocate on behalf of his client. *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). The failure of counsel, in 1974, to advance certain points on appeal which subsequently gained judicial recognition does not render counsel ineffective. Sullivan acknowledges that he was one of the first defendants to be tried under Florida's post-*Furman* death penalty statute. At the time of trial and appeal in 1973–74, the law concerning capital sentencing was in a state of reformation. Sullivan does not direct us to any case decided at that time and overlooked by counsel. Counsel's failure to divine the judicial development of Florida's capital sentencing does not constitute ineffective assistance of counsel. *Accord, Proffitt v. Wainwright,* supra.

Thus, we find that Sullivan received reasonably effective assistance of counsel during the penalty phase and on direct appeal.

### Sullivan's Substantive Constitutional Claims

Sullivan argues that his trial, including the penalty phase, contained the following errors which render the imposition of the death penalty unconstitutional. Sullivan contends that four prospective jurors who voiced reservations about imposing the death penalty were excused by the trial judge in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Sullivan asserts that during the penalty phase, the state prosecutor's remarks and trial court's jury instructions allowed the jury's consideration of non-statutory aggravating factors contrary to *Songer v. State,* 365 So.2d 696 (Fla.1978) and

---

**3.** *See also, Passmore v. Estelle,* 607 F.2d 662 (5th Cir.1979); *Passmore v. Estelle,* 594 F.2d 115 (5th Cir.1979).

limited the jury's consideration on non-statutory mitigating factors in violation of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Sullivan further contends that the trial judge's findings rendered pursuant to Fla.Stat. § 921.141(3) (1973) impermissibly relied upon a non-statutory aggravating factor.

Throughout the federal habeas corpus proceedings, the state has maintained that consideration of the above claims is barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Sykes,* the United States Supreme Court held that a habeas corpus petitioner must show "cause and prejudice" in order to advance in federal court those claims barred from consideration in the state courts by a valid state procedural rule.

It is clear from the record that there was no objection at trial to the judge's excusal of any of the prospective jurors on *Witherspoon* grounds, nor was this issue raised on direct appeal. It is also clear that there was no objection to the jury instructions given at trial nor was this issue raised on direct appeal. The correctness of the trial judge's findings in imposing the death penalty was also not raised on direct appeal. Florida's rules of procedure provided that assignments of error not argued in the brief would be deemed abandoned [4] and specifically provided that jury instructions must be objected to before the jury retired to consider its verdict.[5] In the subsequent motion for post conviction relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850, Sullivan did raise the *Witherspoon* issue as well as attacking both the jury instructions and the trial judge's findings. The Florida courts held that consideration of the issues not raised on direct appeal was procedurally barred.[6]

Because the state court declined to consider the constitutional claims because of valid state procedural rules, Sullivan must satisfy the "cause and prejudice" test of *Sykes.* This requirement was recently reaffirmed by the United States Supreme Court in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), which unequivocally stated that "any prisoner bringing a constitutional claim to the federal courthouse after state procedural default must demonstrate cause and actual prejudice before obtaining relief." 456 U.S. at 129, 102 S.Ct. at 1572. We therefore agree with the state that Sullivan must show cause and prejudice for the state procedural default before his contentions are considered on the merits. Sullivan, however, has not addressed the *Sykes* issue nor has he advanced *any* cause for the procedural default nor proffered *any* prejudice resulting therefrom. Although the burden is on the petitioner in a habeas corpus proceeding, including the burden to satisfy *Sykes, Nettles v. Wainwright,* 677 F.2d 410, 413 n. 2 (5th Cir.1982)[7] we nevertheless will consider whether the requirements of *Sykes* and *Issac* have been met.

4. Florida Rules of Appellate Procedure, Rule 3.7(i) (1973) provided:
   Such assignments of error as are not argued in the briefs will be deemed abandoned and may not be argued orally. However, the Court, in the interest of justice, may notice jurisdictional or fundamental error apparent in the record-on-appeal, whether or not it has been argued in the briefs or made the subject of an assignment of error or of an objection or exception in the court below.

5. Florida Rules of Criminal Procedure, Rule 3.390(d) (1973) provided:
   No party may assign as error grounds of appeal the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection. Opportunity shall be given to make the objection out of the presence of the jury.

6. The Florida Supreme Court stated:
   Sullivan seeks review of twelve issues that were alleged in his [3.850] motion before the trial court. Eleven of these issues were raised or could have been raised in Sullivan's first appeal to this Court. These matters will not support a collateral attack.
   The remaining issue alleges ineffective assistance of counsel. [citations omitted] *Sullivan v. State,* 372 So.2d 938 (1979).

7. *Nettles* was decided by a Unit B panel of the Former Fifth Circuit and is binding precedent absent Eleventh Circuit en banc consideration. *Stein v. Reynolds Securities,* 667 F.2d 33 (11th Cir.1982).

■ The procedural default on the *Witherspoon* issue is most easily resolved. On appeal, Sullivan does not contend that his counsel was ineffective during the jury selection process. Further, the 1968 decision in *Witherspoon* was not novel in 1973 nor would it have been futile to present a *Witherspoon* issue to the state courts. Thus, we find that Sullivan has not shown cause for the procedural default on the *Witherspoon* issue and its consideration on the merits is barred by *Sykes* and *Issac.*[8]

■ The procedural default regarding the state trial court's jury instructions and sentencing findings presents a more complicated situation under *Sykes.* The magistrate did not apply *Sykes'* cause and prejudice test because Sullivan raised the jury instruction and sentencing findings issues in conjunction with allegations of ineffective assistance of counsel. However, in *Washington v. Estelle,* 648 F.2d 276 (5th Cir. 1981), the Fifth Circuit[9] reiterated that "an allegation of ineffective assistance of counsel is not sufficient to satisfy the 'cause' requirement." *Id.* at 278, *citing, Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir.1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). Allegations of ineffective assistance of counsel are insufficient to constitute the requisite cause. Similarly, the "futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial." *Engle v. Isaac,* 456 U.S. at 130, 102 S.Ct. at 1572. However, *Issac* did not resolve whether

> the novelty of a constitutional claim ever establishes cause for a failure to object. We might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the

hope that some aspect might make a latent constitutional claim. On the other hand, later discovery of a constitutional defect unknown at the time of trial does not invariably render the trial fundamentally unfair.

456 U.S. 131, 102 S.Ct. at 1573. The Court in *Issac* found that the basis of the constitutional claim was available and that other defense counsel had perceived and were litigating the constitutional claim, and thus the cause prong of *Sykes* was not satisfied. Although the burden is on Sullivan to show that there is sufficient cause under *Sykes* to excuse the procedural default, we cannot be positive that the relative novelty of Sullivan's claims in 1973 would not excuse the default. We therefore consider whether Sullivan has satisfied the prejudice prong of *Sykes.*

■ Regarding the trial court's jury instructions, Sullivan must show that the ailing instruction so infected the entire trial that the conviction, or in Sullivan's case, the sentence, violates due process. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), *quoting, Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Sullivan has not shown that the jury was denied the use of any nonstatutory mitigating factors or did use any nonstatutory aggravating factors in deciding to recommend the death penalty. Sullivan has not sustained his burden and we cannot say that the jury instructions so infected the sentencing phase of the trial that the actual prejudice test is met. We therefore conclude that the lack of showing of actual prejudice under *Sykes* bars our consideration of the merits of Sullivan's claims regarding the jury instructions.

---

**8.** Because we find that Sullivan has not shown cause for the procedural default, we need not consider whether Sullivan suffered actual prejudice. As noted by the Court in *Issac, Sykes* "stated these criteria in the conjunctive," 456 U.S. at 134, n. 43, 102 S.Ct. at 1575, n. 43, and a conclusion of lack of cause moots the inquiry regarding prejudice.

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Washington v. Estelle* was decided June 16, 1981.

Sullivan also contends that the trial judge's finding of lack of remorse constitutes impermissible reliance upon a nonstatutory aggravating factor. In order for this court to properly consider Sullivan's contention on its merits, we must find the existence of cause and prejudice for the procedural default. We find that Sullivan has not sustained his burden of showing actual prejudice under *Sykes*. The trial judge did not denominate lack of remorse as an aggravating factor, but noted it in his findings. After discussing the fact that the murder was committed in the course of an armed robbery and for pecuniary gain the trial judge stated that "these facts alone in

the Court's judgment could justify the imposition of the death penalty.[10]

Thus, we find that we are barred under *Wainwright v. Sykes* from considering the merits of Sullivan's claims of constitutional error because Sullivan has not shown cause and prejudice for his procedural defaults in state court.

### The Polygraph

Sullivan argues that the prosecutor's intentional eliciting of testimony from Reid McLaughlin, the state's only eyewitness, that he had taken a polygraph, violated Sullivan's sixth and fourteenth amendment rights. We do not agree.

10. The full text of the trial judge's findings is as follows:

This Court independent of, but in agreement with, the advisory sentence rendered by the jury does hereby impose the death penalty upon the defendant, ROBERT AUSTIN SULLIVAN, and in support thereof as required by 921.141(3), submits this, its written findings upon which the sentence of death is based. These findings are as follows:

1. That sufficient aggravating circumstances exist in this particular case that far outweigh any mitigating circumstances in the Record. The death of this decedent occurred while the defendant was engaged in the commission of the crime of armed robbery. In addition thereto, the capital felony was committed for pecuniary gain, as the decedent had been robbed of his personal possessions as well as the possession of the company he represented. These facts alone in this Court's judgment could justify the imposition of the death penalty, but this particular killing is far more useless and heinous than these.

2. The Court finds that the capital felony committed in this case was especially heinous, atrocious and cruel. The Supreme Court of Florida in consideration of the legalities of the recently enacted death sentence in the State of Florida decreed that these terms were to receive their common connotations and decreed that "heinous" meant "extremely wicked or shockingly evil," "atrocious" meant "outrageously wicked and vile" and "cruel" meant "a design to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others." See *State v. Dixon*, 283 So.2d 1, pg. 9, Florida Supreme Court, 1973. This Court cannot conceive of the commission of a crime that is more vividly described by these words as set forth by the Supreme Court than the one at bar. The defendant in this case saw fit to

braggadociously state that he wanted to commit a "crime" which in his mind was to be "the perfect crime." The decedent was bound with hands behind his body with adhesive tape, mentally toyed with by the defendant as to operating and management techniques of the establishment where he worked, a place where the defendant himself had previously been employed. After this mental exercise, the decedent was led to a lonely spot in Dade County with hands still behind him and as he stumbled in the darkness, struck from behind with a tire iron, and then again from behind, while on the ground in a total helpless position, was mortally wounded with four blasts from a .12 gauge shotgun to the back of the head. This Court cannot conceive of a more conscienceless crime.

3. This Court has observed the demeanor and the action of the defendant throughout this entire trial and has not observed one scintilla of remorseness displayed, indicating fullwell to this Court that the death penalty is the proper selection of the punishment to be imposed in this particular case.

This Court is not unmindful of the fact that the defendant is but 26 years of age and is further not unmindful of the fact that this is the defendant's first conviction. However, the aggravating circumstances in this case purely outweigh beyond and to the exclusion of every reasonable doubt in the Court's mind the mitigating circumstances. This Court does impose the death penalty upon the defendant ROBERT AUSTIN SULLIVAN. (R. 1694–1697).

We refuse to elevate form over substance and hold that because the discussion of remorse is contained in a numbered paragraph it must be an aggravating factor. This is especially true because the burden is on Mr. Sullivan to show actual prejudice under *Sykes*.

The Supreme Court of Florida considered the testimony with reference to the polygraph and found that although results are not admissible as a matter of state law, *Kaminski v. State,* 63 So.2d 339 (Fla.1952), the comment in this case was harmless error. *Sullivan v. State,* 303 So.2d at 634–5. Yet because the polygraph reference may have been inadmissible as a matter of state law, does not mean the issue is reviewable by this court on a federal habeas corpus petition. Federal courts may grant relief to a state prisoner "only on the ground that he is in custody in violation of constitution or laws or treaties of the United States." 28 U.S.C. § 2254.

We find that Sullivan's claim with regard to the polygraph does not raise an issue of constitutional or federal law, and we do not have jurisdiction to consider it.

### Conclusion

The only other issue Sullivan raises on appeal is the denial of his motion to amend the habeas corpus petition. We find this contention totally devoid of merit.

The district court's denial of the petition for habeas corpus is AFFIRMED.

TJOFLAT, Circuit Judge, concurring:

I agree with the court's disposition of this appeal; but I write separately to express the following concern.[1] I believe the majority has misapplied *Sykes* by deciding on the merits the cause prong of the cause and prejudice test. The majority recognizes that Sullivan has failed to allege or prove any cause for his procedural defaults in state court. The majority also realizes that the petitioner has the burden of proving cause. Nevertheless, the majority decides the cause issue on the merits.

We should not address the merits of the cause issue because resolution of that issue requires a factual determination, *i.e.,* why did counsel fail to raise his claims timely in state court. This court cannot engage in this factual inquiry and has no business speculating on it. The majority treats the question of cause as purely one of law, and asks the abstract question whether counsel should have been aware of his "relatively novel" constitutional claims. I submit that it is irrelevant what this court thinks about the novelty of petitioner's claims. To reiterate, the question is why petitioner's counsel did not raise these issues in state court when he should have. We cannot answer this question because we are not a trial court, and we cannot ascertain facts not patent from the record. The majority appears to realize that, but nevertheless decides to speculate why there was a procedural default. Such speculation is obviously not part of our appellate function. Therefore, I cannot join with the majority in engaging in it. I would hold that Sullivan has failed to prove cause and thus *Sykes* bars those claims on which there has been a state procedural default.[2]

---

1. I also note, consistent with the majority opinion, that in arguing that the trial sentencer impermissibly considered a nonstatutory aggravating circumstance, Sullivan does not also attack the Florida Supreme Court's affirmance of his allegedly invalid sentence. Therefore, we need not address such an attack.

2. I do not mean to imply that the prejudice prong of the *Sykes* test does not involve a factual determination. The factual inquiry under this prong can be determined, however, from the record of the state court trial alone. Thus, an appellate court may engage in this inquiry without the benefit of additional evidence. In determining cause, however, the record usually will not reflect the reasons for a procedural default. When the record is unhelpful, as in this case, appellate courts should not engage in hypothetical discussions of cause.