573 So.2d 349 (1990)
Robert A. LIEBERMAN, M.D., Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICINE, Appellee.
No. 89-1196.
District Court of Appeal of Florida, Fifth District.
December 6, 1990.
On Motion for Clarification January 24, 1991.
Rehearing Denied January 28, 1991.
*350 Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for appellant.
Lisa S. Nelson of the Dept. of Professional Regulation, Tallahassee, for appellee.
PETERSON, Judge.
Robert A. Lieberman appeals a final administrative order of the Florida Department of Professional Regulation, Board of Medicine (Department). The order revoking his license to practice medicine in the State of Florida fully approved and incorporated the findings of fact and conclusions of law set forth in the recommended order of the hearing officer. The hearing officer found that, with respect to patients B.J., L.I., and D.B., Lieberman had violated section 458.331(1)(t), Florida Statutes (1985), by failing to provide any of them with that level of medical skill, treatment, and care recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances. As to patients L.I. and D.B., the hearing officer found Lieberman also had violated sections 458.329 and 458.331(1)(k), Florida Statutes (1985), in using the patient/physician relationship for purposes of engaging them in sexual activity. We affirm in part and reverse in part.
L.I.'s testimony was that she was raped by Lieberman on July 2, 1982, while in his office as a patient for a postoperative examination and removal of bandages. She testified that she initially failed to report the rape because she was embarrassed and felt that she had not struggled enough to prevent the forceful encounter. On July 20, 1982, she returned to his office to obtain a medical release to return to work, and, since he was her attending physician, she had to obtain the release from him. At the nurse's instruction, she undressed for a pelvic examination. Subsequently, she found herself for the second time in the presence of Lieberman without a nurse. This time, she alleges, he touched her private area and was undoing his trousers when the phone rang. He answered, dressed, and exited the room. When he returned, L.I. told him, "Just give me my release and I'll go," to which Lieberman responded that such an event had never before occurred and that it was important not to say anything about what had happened. In November 1982, she returned a third time after receiving a card in the mail reminding her it was time for a pap test. She testified that she returned because she hoped that she might be able to establish proof that he was sexually assaulting her, proof other than her word against his. At this final visit, however, the test was accomplished *351 with a nurse present and without incident.
In March 1983, L.I. began seeing a therapist because she was having trouble with her children. At some point during the counseling, L.I. revealed her encounters with Lieberman and, with the therapist's encouragement, eventually filed a complaint with the Department.
At the administrative hearing, the Department's attorney asked L.I.'s therapist:
At any time during her visits did she ever discuss with you her taking any type of tests to determine whether or not she was being truthful or lying concerning the allegations that she had made?
The therapist answered yes, and Lieberman's attorney immediately objected on the ground that the results of any such tests are inadmissible. The hearing officer erroneously overruled the objection with "Okay, overruled. Go ahead." The therapist then continued:
We did not discuss such a test. She just told me on one occasion that she would like to take a lie detector test because she was so positive of her veracity, and she wanted it prove it [sic]. She wanted somewhere to have the stamp of approval on the fact that what she was saying was the truth, and, subsequently, she did take a test and she reported to me that she passed with flying colors.
This testimony was countered with Lieberman's motion to strike, to which the hearing officer responded, "I'm not going to strike it. I can't rely on that testimony."
At the hearing, Lieberman denied that the sexual encounters occurred and asserted that the date the alleged rape took place was his wedding anniversary and that his wife was in the building at the time the alleged rape took place. Additionally, the doctor presented evidence that sexual intercourse could not have occurred on the examining table as described because it was anatomically impossible. Other than Lieberman, L.I., and the therapist, no other witnesses testified as to whether the sexual encounters between Lieberman and L.I. took place.
It was especially important to determine whether the sexual encounters with L.I. occurred since, under section 458.331(1)(k), Florida Statutes (1985), a patient is presumed to be incapable of consenting to sexual activity with her physician. The direct conflict in testimony of the only two witnesses to the alleged incident was resolved against Lieberman by the hearing officer; that is, she made the factual finding that L.I.'s testimony about the initially unreported rape and two subsequent returns to the medical office was credible. We believe that under these circumstances, where the initial incident was unreported and where L.I. returned two additional times knowing she would again be asked to disrobe, the results of the test, once heard by the sole trier of fact, could have buttressed the testimony of L.I. in the mind of the hearing examiner. We cannot conclude that harmless error occurred by admitting into evidence the results of the lie detector test. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
It is and has been the rule in Florida that polygraph results are inadmissible as evidence. Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984); Farmer v. City of Fort Lauderdale, 427 So.2d 187 (Fla.), cert. denied, 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 86 (1983). The Department notes that mere mention of a polygraph test will not cause reversible error. Hansbrough v. State, 509 So.2d 1081 (Fla. 1987); Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). In all three of the cases cited by the Department, the fact-finder was not told of the results of the polygraph test, and the witnesses were not asked directly about the polygraph examination, although, in Sullivan, the state admitted that the purpose of one of its questions was to elicit testimony regarding the polygraph. In the instant case, the hearing officer permitted and seemed to encourage the Department's attorney to advise her of the results of the lie detector test.
*352 The law is so clear on this issue that we must presume that, because such a close question of fact was presented to the hearing officer, the Department's attorney was willing to risk reversal in an attempt to tip the scales of credibility in favor of L.I.'s testimony over that of Lieberman's denial. The Department attempts to excuse the introduction of the testimony by alleging that it was relevant for the purpose of proving the victim's state of mind, not for the purpose of proving she was telling the truth. Whatever the Department perceives as the reason for the introduction of the testimony, it does not change the fact that it is improper to proffer into evidence results of lie detector tests.
The Department also candidly concedes that results of a polygraph test would not have been admitted error free in a civil proceeding. But it then argues that, in an administrative context governed by section 120.58(1) of the Florida Statutes, the refusal to strike the answer of the therapist was, at worst, harmless error where the hearing officer immediately indicated the polygraph testimony would not be relied upon. There is no reason, however, to treat this error differently because it occurred in an administrative rather than a civil proceeding. In both proceedings, the trier of fact must make findings based upon the influence the evidence exerts upon the decision-making process. Whether a matter is before a trial judge or a hearing officer is not determinative of the importance of the matter before the tribunal. Likewise, the fact that the case was not heard by a jury does not mean that the introduction of the inadmissible evidence was harmless error. In Parks v. Zitnik, 453 So.2d 434, 437 (Fla. 2d DCA 1984), the court stated:
The appellee contends that any error committed by the trial court was harmless because the case was tried by the court rather than by a jury. Since the parties did not request a jury trial, the trial judge had to determine the credibility of the parties. Jalbert v. State, 95 So.2d 589 (Fla. 1957). Due to the nature of this case, the credibility of the parties was crucial and therefore we cannot hold the error was harmless. Had the trial judge stated that he based his findings only upon certain evidence and that he disregarded the challenged evidence, the error, if any, in the admission of such evidence could have been determined harmless. Capitoli v. State, 175 So.2d 210 (Fla. 2d DCA 1965).
Where the proof of guilt is so convincing that a person would clearly have been found guilty even without collateral evidence introduced in violation of the evidence code, the violation of the code may be considered harmless. In the case sub judice, however, because of the importance of the credibility of the witnesses under the particular facts of this case, we cannot say the evidence in favor of the appellee was so clear and convincing that introduction of the challenged evidence was harmless. A trial judge is presumed to rest his judgment on admissible evidence and to disregard inadmissible evidence, United States v. Masri, 547 F.2d 932 (5th Cir.), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977), but in view of the specific findings of admissibility in this case, we cannot hold the trial court disregarded inadmissible evidence.
In the instant case, while ultimately the hearing officer indicated she would not rely on the polygraph testimony, she first invited its introduction and then refused to strike it. These mixed signals on a cold record before us, together with what we perceive to be an innate inability of the human mind to obliterate what it has heard and the fact that the findings against the doctor were totally dependent upon the hearing officer's assessment of the witnesses' credibility, require us to conclude that the error was not harmless. We therefore reverse the finding of the Department on the matter of L.I. and remand for a new hearing, or, in the alternative, the Department may refer the matter back to the original hearing officer for a penalty recommendation based upon the violations for which Lieberman was found guilty with respect to patients B.J. and D.B.
*353 If the Department selects the alternative procedure, Lieberman shall be entitled to present evidence in mitigation. If the Department decides to rehear the matter as to L.I., the new hearing shall be before a different hearing officer who shall avoid any information obtained from the prior hearing or any reference to or results of it with respect to L.I. After the new hearing on the issue of L.I., Lieberman may present such evidence in mitigation as he wishes, just as the Department may present factors in aggravation, and the hearing officer shall then make recommendations to the Board of Medical Examiners as to the penalty to be imposed after reviewing the evidence in the prior hearings of B.J. and D.B. See § 120.57(1)(b)(11), Fla. Stat. (1989). Because the penalty previously imposed upon Lieberman was based on the findings as to all three patients collectively, the penalty imposed is vacated.
Lieberman also raised on appeal the issue of whether he was denied due process when the Board of Medical Examiners refused to allow him to present any mitigating evidence. No such evidence was offered before the hearing officer, and when the final hearing was scheduled before the Board, Lieberman attempted to have it rescheduled in Orlando so that he could present mitigating testimony from colleagues and patients. The Board also refused Lieberman's attempt to supplement the record with letters from colleagues and patients and to have two colleagues testify in person. Lieberman asserts that constitutional due process requires that he be given the opportunity to present to the Board evidence in mitigation subsequent to the Board's ruling on whether he committed the alleged violations, citing three cases in support of such a requirement of due process: The Florida Bar v. Cruz, 490 So.2d 48 (Fla. 1986); The Florida Bar v. Fussell, 179 So.2d 852 (Fla. 1965); Hodge v. Department of Professional Regulation, 432 So.2d 117 (Fla. 5th DCA 1983); cf., Ong v. Department of Professional Regulation, 565 So.2d 1384 (Fla. 5th DCA 1990). None of these cases require that evidence in mitigation be taken before a Chapter 120 agency; they do require that the regulated or licensed individual be given the opportunity to address a regulatory body prior to the announcement of a decision. While a statement may be made, evidence is prohibited by statute from being produced before the Board. Ong v. Department of Professional Regulation, supra; School Bd. of Leon County v. Weaver, 556 So.2d 443, 445 (Fla. 1st DCA 1990); § 120.57(1)(b)(9), Fla. Stat. (1985).
REVERSED in part and REMANDED.
DAUKSCH and COBB, JJ., concur.

ON MOTION FOR CLARIFICATION
The Department of Professional Regulation (DPR) requests clarification of two issues:
(1) Is the Board of Medicine the proper administrative body to decide whether to remand for a new hearing on the issue of L.I. or to refer the matter back to the original hearing officer for a recommendation based upon Lieberman's violations with respects to patients B.J. and D.B.; and
(2) If the Board of Medicine remands for a penalty determination on the findings of patients B.J. and D.B., may the DPR present aggravating evidence if Lieberman presents mitigating evidence?
The answer to both inquiries is in the affirmative.
DAUKSCH and COBB, JJ., concur.